## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

PEOPLESSOUTH BANK, LARRY
PITCHFORD, and JERRY GULLEDGE,

        **Plaintiffs,**

v.

PROGRESSIVE CASUALTY INSURANCE
COMPANY, INC.; ROYAL INDEMNITY
COMPANY, as successor in interest to
GLOBE INDEMNITY COMPANY; HARRIS
LEVESON; and HARRIS PEST AND
TERMITE CONTROL,

        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)



FILED
MAY 26 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

CIVIL ACTION NO.
CV-06-85

### COMPLAINT

**COME NOW** the Plaintiffs, PeoplesSouth Bank (the "Bank"), Larry Pitchford ("Pitchford"), and Jerry Gulledge ("Gulledge"), and for their Complaint against the Defendants would show unto the Court as follows:

#### I. PARTIES

1.    Plaintiff PeoplesSouth Bank, formerly known as Peoples Community Bank, Inc., is a corporation organized under the laws of the State of Georgia, with its principal place of business in the State of Georgia.

2.    Plaintiff Larry Pitchford is a resident citizen of the State of Alabama and currently resides in Abbeville, Alabama.

3.    Plaintiff Jerry Gulledge ("Gulledge") is a citizen of the State of Alabama and currently resides in Eufaula, Alabama.

4.    Defendant Progressive Casualty Insurance Company, Inc. ("Progressive") is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

1465644

EXHIBIT
A

5.    Defendant Royal Indemnity Company ("Royal"), the successor in interest to Globe Indemnity Company, is a foreign corporation with its principal place of business in the State of North Carolina.

6.    Defendant Harris Leveson ("Leveson") is a resident citizen of the State of Alabama and currently resides in Midway, Alabama.

7.    Defendant Harris Pest and Termite Control, Inc. ("Harris") is a corporation organized under the laws of the State of Alabama, with its principal place of business in the State of Alabama.

## II. FACTS

8.    Royal issued certain general liability insurance policies to the Bank that provided coverage at all times relevant hereto.  These policies include, but are not limited to, policy number A SV035530, which provided coverage from December 28, 2001 to December 28, 2002, and policy number G2 SV035675 0000, which provided coverage from December 28, 2002 to December 28, 2003.

9.    Progressive issued one or more directors and officers ("D&O") insurance policies to the Bank that provided coverage at all times relevant hereto.  These policies include, but are not limited to, policy number 10026768-01, which provided coverage from March 26, 2003 to March 26, 2004.

10.    On February 20, 2004, defendants Leveson and Harris filed a complaint in the Circuit Court of Barbour County, Alabama against the Bank, Pitchford, and Gulledge.  In the complaint, Leveson and Harris asserted claims for negligence, wantonness, willfulness, fraud, misrepresentation, suppression, deceit, breach of contract, breach of fiduciary duties, conversion, negligent hiring, retention and supervision, intentional infliction of emotional distress, and outrage.  A copy of the

complaint is attached hereto as Exhibit A. The claims asserted in the complaint are covered under the Bank's policies with Royal and Progressive.

11.    After the complaint was filed, Plaintiffs put Royal and Progressive (the "Insurance Defendants") on notice of the lawsuit and demanded that they defend and indemnify the Bank and its employees, Pitchford and Gulledge. In response, the Insurance Defendants denied coverage and refused to provide a defense against the claims asserted by Leveson and Harris.

12.    During the pendency of the lawsuit, Plaintiffs repeatedly urged the Insurance Defendants to participate in settlement discussions and to contribute to the resolution of the case so that trial could be avoided. The Insurance Defendants were informed of the opportunity to settle within policy limits for a reasonable amount prior to trial. The Insurance Defendants denied coverage and refused to participate in settlement, leaving the Bank, Pitchford, and Gulledge with no means of resolving the case before trial.

13.    On October 7, 2005, the Court entered a judgment in favor of Leveson and Harris and against the Bank, Pitchford, and Gulledge in the amount of $3.5 million. A copy of the judgment is attached hereto as Exhibit B. The judgment is covered under the Bank's policies with the Insurance Defendants. Had the Insurance Defendants exercised good faith and participated in settlement as required under their respective policies, the case could have settled within the policy limits prior to trial.

14.    After the judgment was entered, Leveson and Harris, the plaintiffs in the underlying action, instituted garnishment proceedings against the Insurance Defendants to recover on the Bank's policies. On December 28, 2005, the trial court entered a final

judgment in the garnishment proceeding against the Insurance Defendants and in favor of Leveson and Harris in the amount of $3.5 million. While the judgment in the garnishment proceeding determined the issue of coverage, Plaintiffs' other claims arising out of the Insurance Defendants' bad faith remain to be litigated.

15.    The Insurance Defendants denied coverage for the Plaintiffs' claims without legitimate reason. The tortious conduct of the Insurance Defendants was intentional, gross, wanton, malicious, and/or oppressive and warrants the imposition of punitive damages.

16.    As a proximate result of the Insurance Defendants' conduct, Plaintiffs have been damaged. These damages include, but are not limited to, the following: Plaintiffs have incurred costs and expenses that should have been covered by the policies at issue; Plaintiffs have incurred attorneys' fees and legal expenses; a judgment has been entered against the Plaintiffs; Pitchford and Gulledge have suffered mental anguish and emotional distress; and Plaintiffs have otherwise been damaged.

## COUNT I

17.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

18.    Plaintiffs entered into contracts with the Insurance Defendants to provide insurance.

19.    Pitchford and Gulledge were insureds and/or third-party beneficiaries under said contracts of insurance.

20.    Plaintiffs complied with all terms and conditions under said contracts of insurance.

21.    The Insurance Defendants breached their contracts with Plaintiffs by failing to provide coverage for the claims asserted by Leveson and Harris and otherwise failing to fulfill their obligations under the contracts.

22.    As a proximate consequence of the Insurance Defendants' breach, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

## COUNT II

23.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

24.    At all times material hereto, the Insurance Defendants acted in bad faith by failing to defend Plaintiffs under the policies at issue.

25.    The Insurance Defendants refused to defend Plaintiffs without a reasonably legitimate or arguable reason and had actual knowledge of the absence thereof and/or intentionally, wantonly, recklessly, negligently, and/or innocently failed to determine whether such reason existed.

26.    As a proximate result of the Insurance Defendants' bad faith, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, punitive damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

## COUNT III

27.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

28.    At all times material hereto, the Insurance Defendants acted in bad faith by refusing to pay benefits and indemnify Plaintiffs under the policies at issue.

29.    The Insurance Defendants refused to pay benefits and indemnify Plaintiffs without a reasonably legitimate or arguable reason and had actual knowledge of the absence thereof and/or intentionally, wantonly, recklessly, negligently, and/or innocently failed to determine whether such reason existed.

30.    As a proximate consequence of the Insurance Defendants' bad faith, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, punitive damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

## COUNT IV

31.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

32.    At all times material hereto, the Insurance Defendants acted in bad faith by failing to properly investigate Plaintiffs' claims. Specifically, Defendants failed to properly investigate whether any of the claims asserted by Leveson and Harris afforded Plaintiffs coverage under the aforesaid policies in question.

33.    As a proximate consequence of the Insurance Defendants' bad faith, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, punitive damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

### Count V

34.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

35.    At all times material hereto, the Insurance Defendants acted in bad faith by refusing to settle the underlying lawsuit filed by Leveson and Harris for which coverage existed under the policies issued to the Bank.

36.    The Insurance Defendants refused to settle without a reasonably legitimate or arguable reason and had actual knowledge of the absence thereof and/or intentionally, wantonly, recklessly, negligently, and/or innocently failed to determine whether such reason existed.

37.    As a proximate consequence of the Insurance Defendants' bad faith, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, punitive damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

### Count VI

38.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

1465644

39.    The Insurance Defendants owed a duty to Plaintiffs under their respective contracts of insurance.

40.    At the aforesaid times and places, the Insurance Defendants breached their agreements with Plaintiffs, and failed in their respective duty of fair dealing and good faith owed to Plaintiffs by failing to provide Plaintiffs the full benefits of coverage under the policies as set forth above.

41.    As a proximate consequence of the Insurance Defendants' breach and bad faith, Plaintiffs have been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for an award of actual and compensatory damages, punitive damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest, and such other damages as the Court may deem appropriate.

## COUNT VII

42.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

43.    This claim is for declaratory relief under Rule 57 of the Alabama Rules of Civil Procedure and Sections 6-6-220 through 6-6-232 of the Alabama Code.

44.    All parties who claim an interest that would be affected by this declaration have been made a party to this suit pursuant to Section 6-6-227 of the Alabama Code.

45.    Plaintiffs are entitled to coverage under the aforesaid policies of insurance, including defense and indemnity for the claims asserted by Leveson and Harris.

46.     Plaintiffs are entitled to reimbursement from the Insurance Defendants for all attorney's fees and legal expenses incurred in defending the aforesaid action, and should indemnify Plaintiffs from the judgment entered against them.

47.     Plaintiffs request the Court to enter a declaratory judgment finding the same.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request this Court to find and declare that Plaintiffs are entitled to coverage under the aforesaid policies of insurance as set forth above, plus attorneys' fees for bringing the present action, costs, and interest.  Plaintiffs request such further relief as the Court may deem appropriate.

DATED: May 25, 2006.

Gerald P. Gillespy (GIL029)
Ricky J. McKinney (MCK030)
Jason A. Walters (WAL175)

Attorneys for Plaintiffs
PeoplesSouth Bank and Larry Pitchford

**OF COUNSEL:**

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

_(signature)_

Peter A. McInish (MCI005)

Attorney for Plaintiff Jerry Gulledge

**OF COUNSEL:**

LEE & MCINISH
P. O. Box 1665
Dothan, Alabama  36302
Telephone: (334) 792-4156

**PLEASE SERVE DEFENDANTS**
**BY CERTIFIED MAIL AS FOLLOWS:**

Progressive Casualty Insurance Company, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama  36109

Royal Indemnity Company
as successor in interest to Globe Indemnity Company
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, Alabama  36104

Harris Leveson
151 Warren Road
Midway, Alabama  36053

Harris Pest and Termite Control
c/o Harris Leveson
151 Warren Road
Midway, Alabama  36053

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

CIVIL ACTION NO. CV-04-62○

```
┌─────────────────────────┐
│  F I L E D              │
│    FEB 2 0 2004         │
│  DAVID S. NIX, CLERK    │
│  BARBOUR COUNTY, ALABAMA │
└─────────────────────────┘
```

HARRIS LEVESON, an individual;
HARRIS PEST & TERMITE CONTROL, INC., a corporation;

    Plaintiffs,

vs.

PEOPLES COMMUNITY BANK, a corporation; LARRY PITCHFORD, an
individual; JERRY GULLEDGE, an individual; Fictitious Defendants
"A," "B," and "C," whether singular or plural, that employee, agent
or servant of Defendants PEOPLES COMMUNITY BANK, who or which
negligently, wantonly and/or willfully contracted with and/or
supervised and/or monitored Defendant LARRY PITCHFORD, Defendant
JERRY GULLEDGE and/or Fictitious Defendants; Fictitious Defendants
"D," "E," and "F," whether singular or plural, that person, firm or
corporation who or which concealed, suppressed or failed to inform
or otherwise make known to Plaintiff, HARRIS PEST & TERMITE
CONTROL, INC. and/or any individual Plaintiff that Plaintiffs'
accounts, loans, monies and/or funds were not being properly
handled, directed, reimbursed and/or otherwise managed; Fictitious
Defendants "G," "H," and "I," whether singular or plural, that
person, firm or corporation who or which negligently, wantonly,
willfully, fraudulently or otherwise wrongfully engaged and/or
participated in the process of mishandling Plaintiffs' accounts,
loans, monies and/or funds with which Plaintiffs had entrusted to
Defendants; Fictitious Defendants "J," "K," and "L," whether
singular or plural, that person, firm or corporation who or which
participated in or otherwise did actively or passively aid or abet
the wrongdoing set out herein; Fictitious Defendants "M," "N," and
"O," whether singular or plural, that person, firm or corporation
that is the true and correct name(s) of the Defendants listed
herein as Defendant LARRY PITCHFORD, Defendant JERRY GULLEDGE
and/or Defendant PEOPLES COMMUNITY BANK;

    Defendants.

## C O M P L A I N T

1.    Plaintiff HARRIS PEST & TERMITE CONTROL, INC.,
hereinafter also referred to as "Plaintiff" or "Plaintiff HARRIS

# EXHIBIT A

PEST CONTROL", is a corporate entity with its principal place of business in the Clayton Division of Barbour County, Alabama.

2. Plaintiff HARRIS LEVESON, hereinafter "Plaintiff," or "Plaintiff LEVESON", is an individual over the age of nineteen (19) years and is a resident of the Clayton Division in Barbour County, Alabama.

3. Defendant PEOPLES COMMUNITY BANK, hereinafter "Defendant" or "Defendant PEOPLES BANK," is an Alabama corporation with its principal place of business in Barbour County, Alabama.

4. Defendant LARRY PITCHFORD, hereinafter "Defendant" or "Defendant PITCHFORD", is over the age of nineteen (19) years and is a resident of Houston County, Alabama.

5. Defendant JERRY GULLEDGE, hereinafter "Defendant" or "Defendant GULLEDGE", is over the age of nineteen (19) years and is a resident of Barbour County, Alabama.

6. Fictitious Defendants "A," "B," and "C," whether singular or plural, are those employees, agents or servants of Defendants PEOPLES COMMUNITY BANK, who or which negligently, wantonly and/or willfully contracted with and/or supervised and/or monitored Defendant LARRY PITCHFORD, Defendant JERRY GULLEDGE and/or Fictitious Defendants; Fictitious Defendants "D," "E," and "F," whether singular or plural, that person, firm or corporation who or which concealed, suppressed or failed to inform or otherwise make known to Plaintiff, HARRIS PEST & TERMITE CONTROL, INC., and/or any individual Plaintiff that Plaintiffs' accounts, loans, monies

-2-

and/or funds were not being properly handled, directed, reimbursed and/or otherwise managed; Fictitious Defendants "G," "H," and "I," whether singular or plural, that person, firm or corporation who or which negligently, wantonly, willfully, fraudulently or otherwise wrongfully engaged and/or participated in the process of mishandling Plaintiffs' accounts, loans, monies and/or funds with which Plaintiffs had entrusted to Defendants; Fictitious Defendants "J," "K," and "L," whether singular or plural, are those persons, firms or corporations who or which participated in or otherwise did actively or passively aid or abet the wrongdoing set out herein; Fictitious Defendants "M," "N," and "O," whether singular or plural, those persons, firms or corporations that are the true and correct name(s) of the Defendants listed herein as Defendant LARRY PITCHFORD, Defendant JERRY GULLEDGE and/or Defendant PEOPLES COMMUNITY BANK.    Plaintiffs aver that the wrongdoing of the aforesaid Fictitious Defendants proximately caused damage to them. Plaintiffs aver that the identities of the Fictitious Defendants are otherwise unknown to them at this time, or if their names are known to Plaintiffs at this time, their identities as proper party Defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

   7.    On or about September 2003, Plaintiff HARRIS LEVESON, individually and doing business as HARRIS PEST & TERMITE CONTROL, INC., was contacted by Defendant PEOPLES BANK, by and though its agent/employee Kevin Potthoff, regarding the possibility of

-3-

Plaintiff LEVESON and/or Plaintiff HARRIS PEST CONTROL doing business with Defendant PEOPLES BANK. Defendant PEOPLES BANK represented that it would finance various loans, accounts and/or other lines of credit to Plaintiffs at certain rates, terms, amounts and conditions. As a result of these representations by Defendant, Plaintiffs agreed to and did enter into certain contracts and/or agreements with Defendants for various loans, accounts, lines of credit and other financial services with and/or through Defendants.

8.    On or about September 2003, Plaintiff signed loan documents with Defendant PEOPLES BANK, which were based on certain rates, terms, amounts and conditions. On or about October 2003, Plaintiffs received documents from Defendant PEOPLES BANK pertaining to said loans; however, these documents were incomplete, incorrect and inconsistent with the rates, terms, amounts and/or conditions of the documents which had been shown to Plaintiffs and for which Plaintiffs previously agreed upon and entered into with Defendant for said loans. Plaintiffs promptly notified Kevin Potthoff and Defendant PEOPLES BANK of the discrepancies in the loan documents and that the loan documents were incomplete, incorrect and otherwise inconsistent. However, Defendant PEOPLES BANK failed or otherwise refused to adequately and/or reasonably respond to or otherwise remedy the issues regarding the discrepancies. Plaintiffs repeatedly informed Defendants of these discrepancies.

-4-

9.    On or about October 2003, Plaintiffs received the first coupon book for monthly payment on the loans which Plaintiffs had obtained in September 2003 with Defendant PEOPLES BANK. The amount of the payment as stated in the coupon book was substantially higher than the payment amount that Plaintiffs had agreed to in obtaining the loans.    Plaintiffs notified Defendants of these discrepancies and inconsistencies, but Defendants failed and/or otherwise refused to correct or remedy the problems.

10.    On or about September 2003, Plaintiffs agreed to and did enter into a contract and/or agreement with Defendant PEOPLES BANK whereby Defendant agreed to extend the line of credit on an already existing loan that Plaintiffs had with Defendant.    Plaintiffs informed Defendant PEOPLES BANK that the primary purpose for extending the line of credit on this loan was to provide for and make available additional funds in the form of a business and/or expense draw which could then be drawn and placed into Plaintiffs' existing checking account.

11.    Plaintiffs would inform Defendant PEOPLES BANK that they needed draws off of this line of credit amount so as to make various payments and expenditures from their checking account. Defendant PEOPLES BANK represented to Plaintiffs that these draws had been successfully completed.    However, Plaintiffs later determined that Defendant PEOPLES BANK had negligently, wantonly, willfully, fraudulently and/or otherwise wrongfully failed to extend the amount of the line of credit as agreed upon, and had

-5-

therefore failed and/or otherwise refused to draw money from the line of credit amount and place into Plaintiffs' checking account as Defendants had represented.

12. As a result of Defendants' negligence, wantonness, willfulness, fraud and/or otherwise wrongful conduct in failing to extend the amount of the Plaintiffs' line of credit as Defendants had represented, and thereby failing and/or otherwise refusing to successfully complete these draws from the line of credit/business draw into Plaintiffs' checking account, Plaintiffs' checking account became insufficient, causing numerous checks that Plaintiffs had issued to persons and entities not to clear due to such insufficient funds. Defendants wrongfully withdrew funds from Plaintiffs' accounts without adequate cause or justification. Therefore, Plaintiffs incurred substantial overdraft charges and fees as a result.

13. Plaintiffs continued to inform the Defendants of the discrepancies in the loan documents and that the loan documents were incomplete, incorrect and otherwise inconsistent. Plaintiffs also continued to inform Defendants of other problems with their loans, lines of credit, checking accounts and other service related issues with Defendants. However, Defendants failed, dismissed and/or otherwise refused to correct or remedy such problems that Plaintiffs complained of, but instead Defendants harassed, threatened, ridiculed and otherwise rejected Plaintiffs and their complaints.

14.  At the time the incidents made the basis of this lawsuit occurred, Kevin Potthoff, JERRY GULLEDGE, LARRY PITCHFORD and/or FICTITIOUS DEFENDANTS were agents, employees and/or servants of Defendant PEOPLES COMMUNITY BANK, and were acting within the line and scope of their agency and/or employment with Defendant PEOPLES COMMUNITY BANK. Defendant PEOPLES COMMUNITY BANK, as employer and principal over Kevin Potthoff, JERRY GULLEDGE, LARRY PITCHFORD and/or FICTITIOUS DEFENDANTS who were agents or employees of Defendant PEOPLES COMMUNITY BANK working within the line and scope of their agency or employment, are vicariously liable for the acts of its agents or employees under the doctrine of respondeat superior.

## COUNT ONE

### NEGLIGENCE/WANTONNESS/WILLFULNESS

1.  Plaintiffs reallege all previous allegations contained in this Complaint.

2.  Plaintiffs aver that Defendants PEOPLES COMMUNITY BANK, LARRY PITCHFORD, JERRY GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" were negligent, wanton and/or willful in that they failed to reasonably account for funds, property and/or payments regarding Plaintiffs' bank accounts, lines of credit and/or loans which Plaintiffs with and had through Defendant PEOPLES BANK.

3.  Defendants were negligent, wanton and/or willful in that they failed to provide reasonable and/or adequate financial banking

-7-

services to Plaintiffs.

4.    Plaintiffs   allege   that   Defendants PEOPLES   BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" were negligent, wanton and/or willful in the manner of service that said Defendants provided to Plaintiffs with regard to handling payments,  monies,  properties  and/or  other  funds  relating  to Plaintiffs' accounts and loans that Plaintiffs had with and/or through said Defendants. Specifically, Defendant PEOPLES BANK, by and through its agents and employees, failed to send, convey, execute,  service  and/or  otherwise  handle  payments,  collateral and/or other funds regarding the Plaintiffs' accounts, lines of credit and/or loans with the Defendants.

5.    Plaintiffs   further   allege   that   said   Defendants negligently, wantonly and/or willfully failed to provide reasonable and/or  adequate  service  to  Plaintiffs  concerning  Plaintiffs' checking accounts, lines of credit, loans and related monies, funds and/or collateral with Defendants, including FICTITIOUS DEFENDANTS "A" through "O." Specifically, Defendants, by and through its agents and/or employees, including but not limited to Defendants PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O", repeatedly  failed  and/or  otherwise  refused  to  adequately  or reasonably hold, transfer, deliver, convey and/or otherwise account for monies, payments, property, funds and/or related documents delivered to Defendants by Plaintiffs for the purposes of having Defendants maintain, handle and account for said monies, payments,

-8-

property, funds and/or relating documents, even though Defendants knew or should have known of the critical and eminent nature of reasonably and adequately maintaining, handling and accounting for the same. Defendants negligently, wantonly and/or willfully failed to keep and maintain adequate information and records concerning the Plaintiffs and Plaintiffs' accounts and/or loans by and through the Defendants. Defendants negligently, wantonly and/or willfully failed to reasonably deliver, convey, transfer and/or refund payments and/or monies to and from the various accounts with which Plaintiffs had with Defendants.

6.    Defendants further negligently, wantonly and/or willfully failed to adequately and/or reasonable inform, notify and/or otherwise communicate certain material information to Plaintiffs concerning the status of Plaintiffs' accounts, lines of credit and/or loans with Defendants even though Defendants were under a duty to communicate such material information because there existed a confidential relationship and/or other special circumstances giving rise to such duty in that Defendants either had particular or special knowledge or had a means of receiving said information not shared by Plaintiffs.

7.    As a proximate result of the aforesaid negligence, wantonness and/or willfulness of the Defendants, including FICTITIOUS DEFENDANTS "A" through "O", Plaintiffs suffered as follows:

          (a)  Plaintiffs' were caused to be charged higher

-9-

interest rates on said loans they obtained through Defendants, thereby causing Plaintiffs to expend additional monies, fees and other costs, as well as causing Plaintiffs to lose the use and benefit of said loans and proceeds therefrom;

(b)  Plaintiffs were caused to lose the use, benefit and value of Plaintiff's real property, which was wrongfully included as collateral for loans and lines of credit with and through Defendants, causing Plaintiffs to expend additional monies, fees and other costs, as well as causing Plaintiffs to lose the use and benefit of said loans and/or lines of credit and the real property wrongfully designated as collateral for said loan;

(c)  Plaintiffs lost the use of monies and funds that Plaintiffs placed and held in their accounts with Defendants, and thereby entrusting Defendants with said accounts, when said monies and funds were not reasonably or adequately maintained, but were instead misused, misappropriated, converted and/or otherwise mishandled;

(d)  Plaintiffs will incur expenses necessitated by the filing of this lawsuit;

(e)  Plaintiffs incurred substantial economic loss in paying monies, properties and/or funds to Defendants for which Plaintiffs never received the full use and benefit from;

(f)  Plaintiffs have suffered tremendous damage to their reputations;

(g)  Plaintiff LEVESON was caused to suffer anxiety, worry, humiliation, mental and emotional distress and other incidental damages.

8.  Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiffs of legal rights and entitling Plaintiffs to punitive damages against Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants,

-10-

including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT TWO

### FRAUD/MISREPRESENTATION

1.    Plaintiffs reallege all previous allegations contained in this Complaint.

2.    Plaintiffs allege that Defendants PEOPLES COMMUNITY BANK and/or FICTITIOUS DEFENDANTS "A" through "O" are guilty of fraud and misrepresentation.  The misrepresentations referred to herein were made by Defendant PEOPLES BANK, by and through its employees, agents, servants or representatives, including but not limited to Kevin Potthoff, acting within the line and scope of their capacity of said principal and employer, and in furtherance of the business interest of Defendants.  Said misrepresentations would include, but would not necessarily be limited to, the following:

(a)    That Defendants would and did finance a loan or loans for Plaintiffs at certain specific rates, terms, amounts and conditions, when in fact Defendants financed said loan(s) at rates, terms, amounts and conditions that were different and inconsistent from what Defendants had represented to Plaintiffs;

(b)    That Defendants would and did finance two parcels of Plaintiffs' real property in consideration for certain proceeds of the loan or loans, when in fact Defendants wrongfully financed four parcels of Plaintiffs' real property in consideration for the same amount of said loan proceeds without Plaintiffs' permission;

-11-

(c) That Defendants would and did increase the amount of one of the Plaintiffs' loans from $15,559.50 to $25,000.00, when in fact Defendants did not increase said loan amount as was represented to Plaintiffs;

(d) That Defendants would reasonably and properly handle, maintain, oversee, protect, possess and/or otherwise account for Plaintiffs' accounts, lines of credit and/or loans, as well as the funds, monies, payments, property, currencies, notes, drafts and/or other documents pertaining to said accounts and/or loans that Plaintiffs had with, by and through Defendants PEOPLES BANK; and,

(e) That Defendants would act with honesty and in good faith in and throughout the process of obtaining, maintaining, overseeing, protecting, possessing, accounting for and/or otherwise handling Plaintiffs accounts and/or loans with Defendant PEOPLES BANK.

3.    These misrepresentations were made by the Defendants negligently, wantonly, recklessly, willfully and/or intentionally. Defendants' representations were false and Defendants knew they were false; or Defendants recklessly misrepresented the facts, without true knowledge thereof; or Defendants misrepresented the facts by mistake but did so with the intention that Plaintiffs rely upon them.

4.    Plaintiffs allege that their injuries and damages were caused as a proximate result and consequence of the intentional, willful, wanton, willful and/or reckless misrepresentations made by the Defendants, including FICTITIOUS DEFENDANTS "A" through "O" and the Plaintiffs' reasonable and/or justifiable reliance upon these misrepresentations.

5.    Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs,

-12-

thereby depriving Plaintiffs of legal rights and entitling Plaintiffs to punitive damages against Defendants.

6.    Plaintiffs further aver that Defendants are guilty of conduct evidencing a pattern or practice of intentional misconduct or are guilty of conduct involving actual malice. Defendant PEOPLES BANK authorized or ratified the conduct of its employees, agents, servants or representatives, including but not limited to Kevin Potthoff and/or FICTITIOUS DEFENDANTS "A" through "O" or the acts of said persons and/or Defendants were calculated to or did benefit Defendant PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O."

7.    Plaintiffs aver that the misrepresentations made by the Defendants were intentional, willful, wanton and/or reckless and constitute fraud under the laws of the State of Alabama, §§ 6-5-100, 6-5-101, 6-5-102 of the Code of Alabama (1975). The Defendants knew that except for these misstatements, misrepresentations and/or other wrongful acts, the Plaintiffs would not have relied on said misrepresentations, but would have acted otherwise to ensure that its finances, moneys, property and/or funds maintained and/or overseen by and through Defendants were otherwise adequately maintained, overseen, protected, possessed, accounted for and/or otherwise handled in a manner so as to provide Plaintiffs with adequate and sufficient financial services and protections.

8.    Plaintiffs aver that as a direct, proximate and

-13-

foreseeable result of the aforesaid fraudulent misrepresentations and other wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant PEOPLES BANK, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT THREE

### FRAUD/SUPPRESSION

1.    Plaintiffs reallege all previous allegations contained in this Complaint.

2.    Plaintiffs aver that on numerous occasions, Defendants PEOPLES COMMUNITY BANK and/or FICTITIOUS DEFENDANTS "A" through "O", by and through its employees, agents, servants or representatives, including but not limited to Kevin Potthoff, acting within the line and scope of their capacity of said principal and employer, and in furtherance of the business interest of said Defendant, suppressed material facts from Plaintiffs by and through their misrepresentations and suppressions of material facts concerning the Plaintiffs' finances, monies, property, funds and/or loans with which Plaintiffs entrusted to Defendants, and which are made the basis of this lawsuit, to wit: Defendants PEOPLES COMMUNITY BANK and/or FICTITIOUS DEFENDANTS "A" through "O" knowingly, willfully and/or wantonly suppressed from Plaintiffs the

-14-

fact that Plaintiffs' finances, monies, property, accounts, funds and/or loans were not being properly handled or maintained, thereby causing Plaintiffs' accounts with Defendant PEOPLES BANK to become insufficient and overdrawn. Defendants further knowingly, willfully and/or wantonly suppressed from Plaintiffs certain material facts concerning the terms, amounts and conditions of Plaintiffs' accounts, lines of credit and loans with and though Defendants, as well as the real property which Plaintiffs used as collateral for said loans.

3.    Defendants suppressed the material facts set forth above with the intent to cause and/or induce the Plaintiffs to rely on Defendants' suppression thereby allowing Plaintiffs' finances, monies, accounts, property, funds and/or loans that Plaintiffs had with Defendant PEOPLES BANK to become incorrect, insufficient and/or overdrawn. The failure of the Defendants to inform the Plaintiffs of the fact that Plaintiffs' finances, monies, accounts, property, funds and/or loans were not being adequately and/or properly handled or maintained, when the Defendants knew that said accounts, monies, property, finances, loans and/or funds were not being adequately maintained and/or handled, and the fact that the Defendants failed to disclose such facts to the Plaintiffs, was a suppression of material facts, which the Defendants had a duty to communicate to the Plaintiffs. The Defendants' suppression constitutes legal fraud.

4.    Plaintiffs allege that the Defendants' actions are a

-15-

violation of § 6-5-102 of the Alabama Code (1975).

5.    Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiffs of legal rights and entitling Plaintiffs to punitive damages against Defendants.

6.    Plaintiffs further aver that Defendants are guilty of conduct evidencing a pattern or practice of intentional misconduct or are guilty of conduct involving actual malice.    Defendant PEOPLES BANK authorized or ratified the conduct of its agents, employees, servants and/or representatives, including but not limited to Kevin Potthoff and/or FICTITIOUS DEFENDANTS "A" through "O", or the acts of said persons and/or Defendants were calculated to or did benefit Defendants PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O."

7.    Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS "A" through "O" aforesaid suppression of material facts and other wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant PEOPLES BANK, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT FOUR

### DECEIT

1.    Plaintiffs reallege all previous allegations contained in this Complaint.

2.    Plaintiffs aver that on numerous occasions, Defendants PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O", by and through its employees, agents, servants or representatives, including but not limited to Kevin Potthoff, acting within the line and scope of their capacity of said principal and employer, and in furtherance of the business interest of said Defendant, intentionally and/or willfully misrepresented material facts concerning the status of the Plaintiffs' accounts, monies, property, finances, loans, funds and/or other issues relating to the bank accounts, lines of credit and/or loans that Plaintiffs obtained through the Defendants, and which are made the basis of this lawsuit. Specifically, Defendants knowingly, willfully and/or wantonly misrepresented to Plaintiffs that Defendants would reasonably and adequately handle, maintain and oversee Plaintiffs' finances, monies, accounts, property, funds and/or loans, when in fact Defendants failed to reasonably and/or adequately do so; Defendants knowingly, willfully and/or wantonly misrepresented to Plaintiffs that Defendants would reasonably and/or adequately maintain, oversee and otherwise handle Plaintiffs' accounts with Defendant PEOPLES BANK even though Defendants were not reasonably

-17-

and/or adequately doing so, thereby causing Plaintiffs' finances, monies, accounts, funds, property and/or loans that Plaintiffs had with Defendant PEOPLES BANK to become incomplete, incorrect, insufficient and/or overdrawn; and, Defendants knowingly, willfully and/or wantonly misrepresented to Plaintiffs that Defendants would in act with honesty and in good faith in dealing with and handling, maintaining and/or servicing Plaintiffs accounts with said Defendants. Defendants knowingly, willfully and/or wantonly misrepresented to Plaintiffs that Plaintiffs had certain sums of monies or funds financed at certain rates for certain periods of time, when in fact Defendants knew or should have known that such certain financing terms as was represented to Plaintiffs by Defendants did not exist and/or were otherwise not as Defendants had previously represented to Plaintiffs.

3.    At the aforesaid times, the Defendants knew that they were not rightfully and/or lawfully disclosing pertinent information to Plaintiffs regarding Plaintiffs' finances, monies, accounts, funds, property and/or loans, and such terms thereunder, that Plaintiffs obtained through Defendants, and that they were fraudulently suppressing such information, yet nevertheless knowingly, willfully and/or recklessly deceived the Plaintiffs with the intent to cause and/or induce Plaintiffs to rely on Defendants' suppression thereby allowing Plaintiffs' finances, monies, accounts, funds, property and/or loans that Plaintiffs had with Defendant PEOPLES BANK to become incomplete, insufficient,

-18-

incorrect and/or overdrawn, and also allowing Plaintiffs to incur substantial loss of monies, property and/or funds as a result thereof.

4.    At the aforesaid times, the Defendants asserted the aforesaid material facts as true, when they were not true, and Defendants knew the asserted facts not to be true at the time the Defendants made such assertions to Plaintiffs. At the aforesaid times, the Defendants fraudulently expressed, coerced, and misrepresented facts to the Plaintiffs concerning the Plaintiffs' finances, monies, accounts, funds, property and/or loans, and such terms thereunder, and which Plaintiffs obtained through Defendants and for which are made the basis of this lawsuit. Therefore, the Defendants violated §§ 6-5-103 and 6-5-104, <u>Code of Alabama</u>, (1975).

5.    Plaintiffs aver that Plaintiffs acted upon, and reasonably relied upon, the Defendants' misrepresentations to their detriment and that as a direct, proximate, and foreseeable result of the Defendants' aforesaid fraudulent misrepresentations and other wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

6.    Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiffs of legal rights and entitling Plaintiffs to punitive damages against Defendants.

7.    Plaintiffs further aver that Defendants are guilty of

-19-

conduct evidencing a pattern or practice of intentional misconduct or are guilty of conduct involving actual malice. Defendant PEOPLES BANK authorized or ratified the conduct of its agents, employees, servants and/or representatives, including but not limited to Kevin Potthoff and/or FICTITIOUS DEFENDANTS "A" through "O", or the acts of said persons and/or Defendants were calculated to or did benefit Defendants PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O."

8. Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS "A" through "O" aforesaid wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant PEOPLES BANK, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT FIVE

### BREACH OF CONTRACT

1. Plaintiffs reallege all previous allegations contained in this Complaint.

2. Plaintiffs aver that there existed express and/or implied contracts and/or agreements between Plaintiffs and Defendants wherein for good and valuable consideration paid or otherwise tendered by Plaintiffs, Defendants contracted and/or otherwise

-20-

agreed to act as agent for Plaintiffs in reasonably procuring, obtaining, handling, maintaining and/or otherwise overseeing financial accounts, lines of credit, loans and/or other financial services for Plaintiffs. There also existed express and/or implied contracts and/or agreements between Plaintiffs and Defendants, whereby for good and valuable consideration paid or otherwise tendered by Plaintiffs, Defendants contracted and/or agreed to reasonably and/or adequately provide and maintain current and adequate bank accounts, lines of credit, loans and/or other financial services to and for Plaintiffs.

3.    Plaintiffs aver that Defendants have breached said contracts and/or agreements with Plaintiffs, in that Defendants have failed to reasonably and adequately procure, obtain, handle, maintain and/or otherwise oversee bank accounts, lines of credit, loans and/or other financial services, as well as monies, funds, property and/or terms therein, for Plaintiffs, thereby failing to perform under said express and/or implied contracts and/or agreements. Defendants have further breached said contracts and/or agreements by failing to reasonably and/or adequately provide and maintain bank accounts, lines of credit, loans and/or other financial services, as well as monies, funds, property and/or terms therein to and for Plaintiffs.

4.    Said agreements and/or contracts as stated above were binding contracts between the Plaintiffs and the Defendants. Plaintiffs aver that the Defendants breached said agreements and/or

-21-

contracts in that the Defendants failed to provide and/or perform adequate, reasonable and/or competent service for Plaintiffs as Plaintiffs' banker and financial banking institution.

5.    Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS "A" through "O" breach of said agreements and/or contracts, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant PEOPLES BANK, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT SIX

### BREACH OF FIDUCIARY DUTIES

1.    Plaintiffs reallege all allegations contained in this Complaint as if fully set out herein.

2.    Plaintiffs allege that an express and/or implied agency relationship existed between Plaintiffs and Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" as its agents. Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" were agents of, and for the Plaintiffs, and thus owed Plaintiffs fiduciary duties to fully inform, communicate, warn, and disclose material facts concerning the accounts, loans and/or funds or property relating

-22-

thereto made the basis of this lawsuit. Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" further had a fiduciary duty, as sole and exclusive agents and representatives of, and for the Plaintiffs, to be completely loyal and faithful to the Plaintiffs, and to provide adequate and/or reasonable financial banking services to Plaintiffs honestly and in good faith.

3. Plaintiffs further allege that there existed a confidential and special relationship between the Plaintiffs and Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" with regard to said Defendants' performance and handling of accounts, loans, financing and/or other related services for, and on behalf of, the Plaintiffs. Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A," through "O" had special and specific knowledge of specific and material facts and circumstances concerning Plaintiffs and their need for various financial services. Defendants' PITCHFORD and/or GULLEDGE special and specific knowledge as stated above was imputed to Defendant PEOPLES BANK, as Defendants' PITCHFORD and/or GULLEDGE principal and/or employer. This confidential and special relationship between the Plaintiffs and Defendants, as well as the other special and particular circumstances stated herein, further created and imposed a fiduciary duty upon the Defendants.

4. Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" breached their fiduciary

-23-

duties owed to the Plaintiffs with regard to their performance of financial banking services for Plaintiffs relating to the various financial accounts, lines of credit and loans, as well as related terms, monies, property and/or funds made the basis of this lawsuit. Specifically, Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O", knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiffs by failing to act with honesty and in good faith with regard to the handling and management of various financial services, property, loans and/or funds of which Defendants made representations to Plaintiffs and which are made the basis of this lawsuit. Defendants further breached their fiduciary duty to Plaintiffs by failing to be completely loyal and faithful to the Plaintiffs, and by failing to provide services to Plaintiffs honestly and in good faith.

5. Defendants knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiffs by failing to disclose the material facts set forth above with the intent to induce the Plaintiffs to pay, entrust and/or tender monies, property, collateral and/or funds to Defendants for various banking accounts, lines of credit and loans made the basis of this lawsuit, and Plaintiffs did in fact make payments and/or otherwise tender consideration and/or collateral to Defendants for said banking accounts and loans, as well as the services related thereto, for which Defendants failed to adequately maintain, handle, manage

-24-

and/or oversee as was represented by Defendants, based on the Defendants' failure to disclose such material facts to Plaintiffs.

6.    The failure of the Defendants to inform the Plaintiffs of the fact that Plaintiffs' banking accounts, lines of credit and loans with Defendant PEOPLES BANK would not be adequately or properly set up, administered, charged or otherwise handled in the same manner as was represented to Plaintiffs by Defendants, when the Defendants knew or should have known the same, and the fact that the Defendants failed to communicate and disclose such facts to the Plaintiffs, was a breach of their fiduciary duty, which the Defendants owed to the Plaintiffs.

7.    Plaintiffs allege that the Defendants' actions are a violation of § 6-5-102 of the Alabama Code (1975).

8.    Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS, aforesaid breach of fiduciary duties and other wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

-25-

## COUNT SEVEN

## CONVERSION

1.    Plaintiffs reallege all allegations contained in this Complaint as if fully set out herein.

2.    Plaintiffs allege that Defendants PEOPLES BANK, PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" wrongfully converted payments, monies, funds, collateral, property and other valuables of the Plaintiffs from Plaintiffs' banking accounts, lines of credit and/or loans with Defendant PEOPLES BANK, to and/or for their own use.

3.    Plaintiffs aver that Defendants converted such value wantonly and recklessly, in knowing violation of Plaintiffs' rights and in violation of law, and that Plaintiffs are entitled to punitive damages.

4.    At all times hereinabove mentioned, Defendants PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" were agents of Defendant PEOPLES BANK and were acting within the line and scope of their agency and actual or apparent authority.

5.    Defendants PEOPLES BANK impliedly authorized or ratified the conduct of its agents, employees, servants and/or representatives, including but not limited to Kevin Potthoff, LARRY PITCHFORD, JERRY GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O", or the acts of said persons and/or Defendants were calculated to or did benefit Defendants PEOPLES BANK and/or FICTITIOUS

-26-

DEFENDANTS "A" through "O."

6.    At all time hereinabove mentioned, FICTITIOUS DEFENDANTS "A" through "O" were agents and/or employees of Defendants PEOPLES BANK, and were acting within the line and scope of their agency and/or employment with said Defendants with actual or apparent authority.

7.    Defendants PEOPLES BANK impliedly authorized or ratified the conduct of said FICTITIOUS DEFENDANTS "A" through "O" or the acts of said FICTITIOUS DEFENDANTS "A" through "O" were calculated to or did benefit said Defendants.

8.    Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS "A" through "O" aforesaid wanton, reckless other otherwise wrongful conversion of Plaintiffs' payments, monies, funds, collateral, property and other valuables, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT EIGHT

### NEGLIGENT HIRING, RETENTION and SUPERVISION

1.    Plaintiffs reallege all previous allegations contained in this Complaint.

-27-

2.    Plaintiffs aver that Defendants PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O" negligently, wantonly and/or willfully hired and retained its agents, employees, servants, and/or contractors, including but not limited to Kevin Potthoff, LARRY PITCHFORD, JERRY GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O."

3.    Defendants further negligently, wantonly and/or willfully failed to adequately train, supervise and/or monitor the activities of Kevin Potthoff, LARRY PITCHFORD, JERRY GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" and negligently, wantonly and/or willfully failed to detect and/or deter the fraudulent activities conduct by its agents, employees, servants and/or contractors, including but not limited to Defendants PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O."

4.    The negligence, wantonness and/or willfulness of the Defendants, including FICTITIOUS DEFENDANTS "A" through "O", was the proximate and/or combined and concurring cause of Plaintiffs' damages as set forth herein.

5.    As a result of Defendants' PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O" negligence, wantonness, and/or willfulness, Kevin Potthoff, LARRY PITCHFORD, JERRY GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiffs of their legal rights.

-28-

6.    Plaintiffs further aver that Defendants are guilty of conduct evidencing a pattern or practice of intentional misconduct or are guilty of conduct involving actual malice.    Defendants PEOPLES BANK and/or FICTITIOUS DEFENDANTS "A" through "O" authorized or ratified the conduct of its agents and employees, including Defendants PITCHFORD, GULLEDGE and/or FICTITIOUS DEFENDANTS "A" through "O" or the acts of said Defendants and/or their agents or employees were calculated to or did benefit said Defendants.

7.    Plaintiffs aver that as a direct, proximate, and foreseeable result of the Defendants', including FICTITIOUS DEFENDANTS', aforesaid negligence and other wrongful conduct, Plaintiffs have been damaged as previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT NINE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/OUTRAGE

1.    Plaintiffs reallege all allegations contained in this Complaint as if fully set out herein.

2.    Plaintiffs aver that the actions of the Defendants, including Fictitious Defendants "A" through "O" as described above amount to outrage.    The actions of the Defendants were extreme and

-29-

outrageous and were done intentionally or recklessly causing severe emotional distress to Plaintiffs. The distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it.

3. The actions and conduct of the Defendants was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

4. As a result of this conduct, Plaintiffs suffered extreme emotional distress and mental anguish. The conduct of the Defendants, and/or Fictitious Defendants "A" through "O" was of such a nature as to justify an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, including FICTITIOUS DEFENDANTS, for damages, plus interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.


TED TAYLOR


LEAH O. TAYLOR


JARROD D. NICHOLS
ATTORNEYS FOR PLAINTIFFS

-30-

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.**

JARROD D. NICHOLS

**OF COUNSEL:**
TAYLOR & TAYLOR
2130 Highland Avenue
Birmingham, Alabama 35205
(205) 558-2800 (Telephone)
(205) 558-2860 (Facsimile)


**Plaintiffs request that Defendants be served by Certified Mail at
the following addresses:**

PEOPLES COMMUNITY BANK
c/o - Registered Agent
109 E Church Street
Columbia, AL 36319

LARRY PITCHFORD
109 East Church Street
Columbia, AL 36319

JERRY GULLEDGE
117 Collins Ct
Eufaula, AL 36027-6050


-31-

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION



HARRIS LEVESON, an individual;        §
HARRIS PEST & TERMITE CONTROL,        §
et al,                                §
                                      §
            Plaintiffs,               §
                                      §
vs.                                   §        CASE NO.: CV-04-67
                                      §
PEOPLES COMMUNITY BANK, a             §
corporation; LARRY PITCHFORD,         §
an individual; JERRY GULLEDGE,        §
an individual,                        §
                                      §
            Defendants.               §

## ORDER

This matter was called for a jury trial before the Court on August 22, 2005. On motion of the Defendants, the jury demand was withdrawn and the case proceeded to a nonjury trial. Over a three-day period, the Court received testimony of witnesses and documents into evidence in the course of an *ore tenus* hearing. The parties also had an opportunity to submit post-trial briefs. In accordance with Ala. R. Civ. P. 52, the Court makes the following findings of fact and conclusions of law:

### Procedural Background

The Plaintiffs are Harris Leveson and Harris Pest & Termite Control. Plaintiffs' complaint asserted several claims against Defendants Peoples Community Bank (hereinafter "the Bank"), Larry Pitchford and Jerry Gulledge. Those claims are negligence, wantonness, fraud, suppression, deceit, breach of contract, breach of fiduciary duties, conversion, negligent and/or wanton hiring, retention and supervision, outrage and violation of duties as a notary public. Plaintiffs seek compensatory damages and punitive damages.

Defendants denied Plaintiffs' allegations. Defendants contended that the Plaintiffs have not been damaged by their alleged wrongful conduct. Defendants contended that Plaintiffs have conjured up damages which were proved primarily by self-serving testimony. Defendants further contended that Plaintiffs did not present sufficient evidence to support an award of punitive damages.

**EXHIBIT B**

The Court heard testimony from nine witnesses. Plaintiffs called as witnesses Christine Jernigan, Leteshia Jackson, Joe Puccio, Cara Hutto, Ray Weeks and Tamara Grubbs Newton. Defendants called Larry Pitchford and Harris Leveson as witnesses. Plaintiffs then called Jerry Gulledge as a rebuttal witness.

Plaintiffs also offered into evidence the depositions of Lisa Bell, Merri Brogden, Sharon Giddens, Defendant Jerry Gulledge, Macy Holley, Christine Jernigan, Plaintiff Harris Leveson, Michelle Patterson, Defendant Larry Pitchford, Kevin Potthoff, Sandy Stewart, Rickey Stuckey and Ricky Thursby.

The Court considered more than 160 exhibits introduced into evidence by the parties in support of their positions. The Court also received into evidence audiotapes of conversations and written transcripts from those tapes of conversations involving Potthoff, Leveson, Jernigan, Gulledge and Pitchford.

## Findings of Fact

The findings of fact set forth below are based on the entire record, including the observations by the Court of the demeanor of the witnesses, briefs, exhibits, depositions and other relevant evidence adduced at the trial.

Harris Leveson is the sole owner of Harris Pest & Termite Control, whose office is located on Broad Street in Eufaula.

Christine Jernigan is a bookkeeper who works part-time for Harris Pest & Termite Control. Jernigan was authorized by Harris Leveson to handle his finances.

Peoples Community Bank has branches in Alabama, Florida and Georgia. The Bank has six branches in the State of Alabama, one of which is in Eufaula.

Rickey Stuckey is the Bank's Chief Executive Officer. His office is in Colquitt, Georgia.

Defendant Larry Pitchford is the Bank's President for the State of Alabama. He supervises the branch managers of all six branches in the state. He is also on the Bank's loan committee.

In late 2002, Larry Pitchford met with Joe Puccio, who had worked with Kevin Potthoff at Barbour County Bank. Pitchford expressed an interest in hiring Kevin Potthoff. Puccio told Larry Pitchford that if Potthoff was going to work in a lending capacity that he

would have to be closely supervised. Pitchford and Rickey Stuckey hired Kevin Potthoff to be the Bank's manager of the branch in Eufaula on October 29, 2002. As branch manager, Potthoff was actively involved in lending. Potthoff was an "at will" employee of the Bank. The Bank has a probationary period for six months after hire. Potthoff was the Bank's manager until he was terminated on November 3, 2003.

Defendant Jerry Gulledge was hired by the Bank's President Larry Pitchford in June 2003. Gulledge had no previous banking experience. Kevin Potthoff was Gulledge's supervisor. After Potthoff was terminated, Gulledge was promoted to branch manager. Gulledge left the Bank in August 2004.

Sharon Giddens was a consumer lender in the Eufaula branch for the Bank. She was supervised by Kevin Potthoff and then by Jerry Gulledge.

Lisa Bell was employed by the Bank in Eufaula. She also was a notary public. Bell became a notary in the Summer of 2003. She was supervised by Kevin Potthoff and then by Jerry Gulledge.

Harris Leveson had banked with Kevin Potthoff at Barbour County Bank, which later became MidSouth Bank. After Potthoff became employed by the Bank, he tried to convince Leveson to move his loan and accounts there. Leveson opened a business checking account and established a line of credit at the Bank in December 2002.

Potthoff was discovered check kiting on November 22, 2002, one month after he was hired as branch manager. Even though the Bank's Personnel Policy allowed it to summarily dismiss Potthoff for check kiting, the Bank chose to give him a chance.

One month later, in December 2002, Potthoff began writing cashier's checks to his wife in order to quickly obtain funds. This was in violation of the Bank's policies and procedures. However, the Bank continued to employ Potthoff even after notice that he was writing cashier's checks to his wife and delaying the payment on those cashier's checks.

In January 2003, a loan processor at the Bank reported that Potthoff was issuing loans which had terms different from the terms approved by the Bank's loan committee. This was in violation of the Bank's policies and procedures. However, the Bank continued to employ Potthoff even after notice of these problems.

In January 2003, Harris Leveson obtained a $41,000 line of credit from the Bank to take care of cash flow issues in his business. Plaintiffs had an understanding with Potthoff

3

that Leveson or Jernigan would notify him whenever they needed money moved from the line of credit into the company's checking account.

The Bank had a policy which permitted the waiver of non-sufficient fund ("NSF") fees for overdrawn customers. In February 2003, Potthoff paid NSF fees of a customer by depositing bank funds into that customer's account.

In April 2003, Potthoff issued more cashier's checks in his wife's name and wrote an unsecured loan allegedly for his housekeeper in violation of the Bank's policies and procedures.

By May 2003, Potthoff had been overdrawn on his personal account at the Bank 19 times since January 2003. This was in violation of the Bank's policies and procedures. However, the Bank continued to employ Potthoff even after notice of his personal overdrafts. Potthoff also continued to write cashier's checks to his wife and delay payment on those checks. During one week, Potthoff had issued $12,000 in cashier's checks. Rickey Stuckey and Larry Pitchford met with Potthoff regarding these violations but decided to retain Potthoff as the branch manager.

Potthoff also opened up an account in his wife's name from which he constantly cycled monies even though he was not on the account's signature card. The Bank continued to employ Potthoff after notice of these improprieties.

By the summer of 2003, Bank loan processors continued to note misrepresentations by Potthoff regarding loans, including discrepancies regarding interest rates and collateral. However, the Bank continued to employ Potthoff as a branch manager even after notice of these discrepancies.

In August 2003, Larry Pitchford became aware that Kevin Potthoff, with Bank funds, had paid NSF fees for Harris Leveson at Southland Bank. Pitchford determined that Potthoff's action would be excused since the Bank had charged Leveson a 1% loan fee instead of its usual ½%.

During this time Potthoff continued to solicit Leveson's banking business. While Leveson had a line of credit and checking account at the Bank, he also had a mortgage at MidSouth Bank for approximately $200,000. The term of the mortgage was for 30 years at 6.25% interest. The mortgage was secured by two parcels of land as collateral.

Potthoff represented to Leveson that an investment group from Texas had put up money for the Bank's use, and that Leveson could obtain a loan at the Bank with a 3.99%

4

interest rate. Potthoff proposed that Leveson take out a new loan with the Bank to pay off his existing mortgage at MidSouth Bank and the $41,000 line of credit at the Bank. Potthoff also proposed a new line of credit for business operating expenses. The collateral for this new loan was to be the same collateral as on the MidSouth Bank mortgage, which was two parcels of land.

Leveson and Potthoff agreed to the terms for two new loans. The interest rate for the $240,000 loan was at a 3.99% fixed rate for 15 years with no balloon and no acceleration clause. The monthly payment would be approximately $1,700 a month. The line of credit would be for $15,000, but it would be increased to $25,000 shortly after the initial closing.

There were problems with scheduling of the loan closing. The closing ran six to eight weeks late. On September 2, 2003, Christine Jernigan and Harris Leveson attended the closing at the Bank which started shortly before lunch. The closing was handled by Potthoff. Christine Jernigan read the loan documents, and Harris Leveson asked Kevin Potthoff numerous questions regarding the documentation.

When a loan is closed, the Bank requires the customer to initial every page and sign the appropriate signature page in the presence of a notary public. Leveson initialed each page of the two mortgages and signed the documents. However, there was no notary public in the room during the time that the documents were executed. The only person present other than Leveson and Jernigan was Kevin Potthoff. The documents that Leveson signed on September 2, 2003, were consistent with the representations made to him by Kevin Potthoff regarding the terms of the loans.

The Court finds that the loan documents which were presented as exhibits at the trial could not have been signed by Harris Leveson on the morning of September 2, 2003. The mortgages and other documents were not even requested by the Eufaula branch until late that morning. The Bank's courier could not have delivered these documents in time for the closing. The Court finds that the loan documents which were initialed and signed by Harris Leveson were not produced by the Bank and were not presented at trial.

Leveson asked Potthoff for a copy of the closing documents. Potthoff told Leveson that he needed to come back after lunch for a copy. The copies were not ready that afternoon as he had promised.

Shortly thereafter, Leveson signed documents to increase his line of credit from $15,000 to $25,000.

5

Potthoff did not provide Leveson with copies of the loan documents until almost 30 days after the closing. Leveson was never provided with a copy of the settlement statement.

Leveson and Jernigan began to question whether Potthoff was "shooting straight" with them or whether they were getting the run around. Leveson complained to Cara Hutto, a teller at the Bank, and Hutto reported this complaint and approximately ten others to her supervisor. The others that had complained to Hutto about Potthoff were dissatisfied with the amounts of their loan payments and their interest rates.

Lateshia Jackson and her husband also dealt with Kevin Potthoff at the Bank. Potthoff handled their closing. The Jacksons did not get the mortgage Potthoff represented to them that they were getting. There was no notary present to acknowledge their signatures. She and her husband signed documents at the closing but did not receive copies of the documents at that time. When she did get a copy of the documents, it was not what she and her husband had signed.

Beginning September 29, 2003, Leveson and Jernigan started recording their conversations with Potthoff and other bank employees.

Once Leveson finally received copies of the purported loan papers, he noticed that the papers were incorrect. The loan documents which Leveson received from the Bank were not what he had signed at the loan closing in September. None of the pages were initialed. The collateral was four parcels of land instead of two. The interest rate for the large loan was shown to be at 5.5% instead of 3.99%. The monthly payments were $2,098 instead of $1,723. The loan documents specified a balloon payment and contained an acceleration clause.

The documents that Leveson received also indicated that a notary at the Bank, Lisa Bell, signed the acknowledgments as having witnessed Leveson's signatures. However, Bell failed to keep a register book for her notarial acknowledgments, and she did not remember being present at the Leveson closing. She acknowledged that she did not know if Leveson signed the mortgage acknowledgments. She admitted that she could have notarized the documents without witnessing Leveson's execution of the documents.

When confronted by Leveson and Jernigan, Potthoff acknowledged that the documents were incorrect. He claimed that the documents could have been mixed up in the copying process. Potthoff told Leveson that the mortgage would be corrected, that he would have the 3.99% interest rate and that Leveson should pay the agreed-upon payment of about $1,700 per month. Potthoff also assured Leveson that his line of credit was for $25,000 and that the first year's payments on that loan would be interest only.

6

In October 2003, Potthoff, without authorization, withdrew monies from his wife's law firm's account and deposited them into his account. This was in violation of the Bank's policies and procedures. However, the Bank continued to employ Potthoff as the branch manager even after notice of these withdrawals.

Leveson and Jernigan believed that the line of credit had been increased to $25,000 and requested draws off the line of credit to go into the checking account. Potthoff confirmed that these draws and transfers had been successfully done. Potthoff gave deposit slip receipts to Leveson and Jernigan showing that these draws and transfers had been completed as they requested. Jernigan wrote checks from the account against these deposits.

However, Kevin Potthoff failed to transfer monies from Plaintiffs' line of credit into the checking account. Checks written by Jernigan bounced due to the fact that these draws and transfers were never made. Plaintiffs were caused to incur enormous NSF fees simply because Potthoff failed to transfer funds as promised and as represented.

Potthoff agreed to reimburse Plaintiffs for the NSF fees because Plaintiffs incurred the fees as a result of his mistakes. Branch managers have the authority to agree to reimburse a customer for certain expenses or fees from the Bank's NSF account.

From April 2003 to September 2003, Kevin Potthoff wrote 28 different loans in excess of $5,000,000 on behalf of the Bank. He was the Bank's leading lender for the State of Alabama. At the time of his dismissal, Potthoff's loan portfolio was approximately $25,000,000.

On October 24, 2003, Potthoff presented Leveson with deposit slips of $2,150 and $3,500. The dollar payment represented reimbursement of the NSF fees which Potthoff had promised.

In late October of 2003, Harris Leveson signed a Loan Modification Agreement which modified the interest rate on the large loan to 3.99%. According to Larry Pitchford and unbeknownst to Plaintiffs, the Loan Modification was never presented to the loan committee for approval.

On October 29, 2003, Plaintiffs delivered to the Bank a check for $1,769.89 which represented his first loan payment.

Toward the end of October, Kevin Potthoff went on vacation. While Potthoff was out of the office it came to Pitchford's attention that money had been moved by Potthoff from other customers' accounts into Harris Leveson's account. On Monday, November 3, 2003,

7

Pitchford confronted Potthoff about the transfers and terminated his employment with the Bank.

Bank employees were instructed not to tell any of the Bank's customers about Potthoff's termination for one week. After one week, they could say that Potthoff was no longer employed at the Bank.

Jerry Gulledge was promoted to branch manager after Potthoff's termination. After Potthoff's termination, Christine Jernigan and Harris Leveson went to see Sharon Giddens, Jerry Gulledge and Larry Pitchford at the Bank regarding the problems with their loans and accounts. Leveson and Jernigan told Giddens, Gulledge and Pitchford that they had not been given the right copies of the loan documentation by Kevin Potthoff. They also told them about the numerous promises and representations made by Kevin Potthoff.

The $1,769.89 check written by Plaintiffs for their first loan payment was not presented by the Bank for payment until November 14, 2003. The Bank noted on its records that the $1,769.89 payment was a "partial" payment.

On November 3, 2003, Leveson delivered another loan payment to the Bank. This was a cashier's check from Southland Bank for $2,426.85. Leveson delivered the payment for that amount because Gulledge had insisted that he do so.

Jerry Gulledge called Harris Leveson and told him that the $2,426.85 check for the second loan payment that was drawn on Southland Bank was no good. Leveson told Gulledge that the money was in his account at Southland Bank and that the check was good. The check eventually cleared.

On November 7, 2003, the Bank unilaterally withdrew monies from Plaintiffs' account without providing any notice to Harris Leveson. Gulledge instructed Sharon Giddens to debit Leveson's account $5,650. The Bank claimed that the deposit had been "made in error" by Kevin Potthoff on October 24, 2003.

The abrupt withdrawal of $5,650 from Plaintiffs' account left them with no money and in overdrawn status. This caused checks to bounce. Plaintiffs had a positive balance in the account when these monies were removed.

On November 12, 2003, Gulledge sent a letter to Harris Leveson claiming that Plaintiffs were late on their loan payments. Gulledge also threatened foreclosure on Leveson's house and property. Plaintiffs were not late on their loan payments.

8

Gulledge and Pitchford insisted that Leveson abide by what they knew to be clearly deficient loan documents in the Bank's file. Leveson and Jernigan were told that if they could not provide copies of what they claimed Kevin Potthoff promised them or what they claimed they had signed that the Bank wouldn't do anything about it.

According to Larry Pitchford, the Bank showed Plaintiffs' line of credit to be only $15,000 and not $25,000 as represented by Potthoff. Pitchford testified that the Loan Committee had been presented with a request for a $25,000 line of credit request, but that the Committee had approved Leveson for only $15,000. Gulledge told Leveson that until the Bank could find documents showing a $25,000 line of credit, the Bank had to go with the documents that they had which was $15,000.

On December 29, 2003, Gulledge sent Leveson two certified mail letters. One letter advised Leveson that his account had been overdrawn for 49 consecutive days and that the Bank had closed his account. The Bank gave Leveson until Monday, January 5, 2004, to pay $6,784.57 in overdrafts or it would be turned over for collection. This overdraft resulted from the Bank's removal of funds from Plaintiffs' account in November. The second letter advised that his loan was past due and that he had until January 5, 2004, to bring the loan current. The letter also advised that another payment of $4,296.74 was also due on January 5, 2004.

Pitchford and Gulledge advised Leveson that he could pay off the overdraft amount by borrowing additional monies from the Bank. Jerry Gulledge presented to the Bank's Loan Committee a request for a $6,875.57 loan for Harris Leveson to repay NSF and overdraft fees at the Bank. The request noted that the charges and fees were caused "by a previous Eufaula lender." The loan request also noted that "customer still disputes charge." The Loan Committee approved the request but required collateral valued at $330,000. After Leveson refused to go forward with the loan, the Bank wrote off the NSF and overdraft fees. However, the Bank continued to threaten Leveson with economic sanctions even after it had decided to write off the overdraft amount.

In February 2004, Defendants Gulledge and Pitchford threatened Leveson again by telling him that in addition to immediate foreclosure, the Bank had the right to call the entire amount of Leveson's loans.

There is substantial evidence of damage to the Plaintiffs as a result of Defendants' conduct. Leveson was forced to go to various businesses in Eufaula and pick up numerous bounced checks. Potthoff also went to various businesses and picked up bounced checks. The Bank charged $25 per NSF check. The payee's bank charged $30 per NSF check. Kevin Potthoff drafted a letter for Plaintiffs to distribute which explained that "bank error"

9

caused the checks to bounce. However, businesses did not want the letter. The businesses just wanted their money.

Employees' paychecks bounced, including three to Harris Leveson's secretary, Merri Brogden. Even though Kevin Potthoff apologized to her about the bounced checks, Mrs. Brogden was afraid that Harris Leveson would "go under." When she and the other employees went to the Bank to cash their paychecks, Bank employees would cash them only if Kevin Potthoff were present and gave them his authorization.

Because Plaintiffs' checks were returned for insufficient funds, Plaintiffs' account was picked up by the CheckScan system utilized by a number of Eufaula businesses, including IGA, Piggly Wiggly, Inland Oil, Liberty Oil, Big Cat, Winn-Dixie, Eufaula Country Club and Video Warehouse. Businesses utilizing CheckScan refused to accept Plaintiffs' checks on numerous occasions, causing Harris Leveson to be inconvenienced and greatly embarrassed.

Businesses who received bad checks were concerned about the viability of Plaintiffs' business. People on the street asked Leveson about problems with his business. Between March and October 2003, Plaintiffs had 52 different checks from the Bank which were returned and 235 which were force paid. Most of the 52 bounced checks were presented for payment more than once. The Bank assessed Plaintiffs a $25 charge for each of the 287 checks which were issued with insufficient funds. In addition, for each of the bounced checks, all of the merchants except the Big Cat in Georgetown charged a $30 bounce fee; the Big Cat charged $25 for each of its two bounced checks. These fees alone total at least $9,725.

After the Probate Court received a bad check, the Barbour County Courthouse refused to accept a check from Leveson. Leveson was not allowed to pay with a check at the Courthouse until August of 2005.

Ray Weeks, owner of Big Cat in Georgetown, has known Harris Leveson for a number of years. In 2003, the Big Cat received two bad checks from Leveson. These two bad checks caused him concern about Leveson's business.

Tamara Grubbs Newton's employer, Eufaula Farm Supply, also known as Rainbow Farm Supply, received two bad checks from Plaintiffs in August and September 2003. Mrs. Newton became concerned about Harris Leveson's business, especially since Leveson had never previously given her employer a bad check.

Certified letters concerning bad checks soon poured in from collection agencies. Within ten days of receipt of these letters, Plaintiffs had to pay their indebtedness by cashier's check or money order. Because of these collection letters and because the Bank falsely reported to the credit bureau that Plaintiffs was past due on their loan, Plaintiffs' credit collapsed. VISA declined to issue Plaintiffs a credit card. American Express and GMAC canceled their cards. Plaintiffs' credit score also suffered.

Harris Leveson never agreed that the Bank could have as collateral four parcels of land plus his home. Nonetheless, the Bank recorded with the Barbour County Probate Court two mortgages, each having as collateral four parcels of land and Leveson's home. Plaintiffs later sought a loan from Southland Bank to provide operational money for the business, but were refused because Plaintiffs had no additional collateral.

Plaintiffs felt an additional financial crunch after learning that their line of credit at the Bank was $10,000 less than had been represented by Kevin Potthoff and the documents which Leveson had signed. Plaintiffs were prevented from purchasing needed equipment for their business, including a spray rig and bucket truck. When the line of credit matured, Leveson was forced to borrow the money from his father's estate to pay off the indebtedness.

Merri Brogden worked out of her house as Plaintiffs' secretary. Leveson's financial situation became so stressful that Mrs. Brogden quit her job. As a result, Plaintiffs were forced to rent office space. Plaintiffs have paid $225 per month since October 2003 for rent that they would not have had to otherwise pay if she had not quit. The telephone at this office costs Plaintiffs an additional $110 per month. As of August 2005, Plaintiffs had incurred an additional $7,370 in office expenses that they would not have had to incur had Merri Brogden remained as Harris Leveson's secretary.

Added to the out-of-pocket losses was an enormous loss of time. Christine Jernigan has worked at least 20 to 25 hours each week since December 2002 in an attempt to straighten out the problems caused by the Bank's errors. Harris Leveson agreed to pay Mrs. Jernigan for her services once the Bank problems were resolved. Mrs. Jernigan earns $15 per hour for bookkeeping work.

Harris Leveson has spent approximately 350 hours trying to fix the problems caused by Kevin Potthoff and others at the Bank. Because Leveson often spent up to four hours a day at this endeavor, Harris Pest & Termite Control lost between 150 and 160 termite customers. The value of each of these customers over the five-year contract period ranges from $1,150 to $1,350. The loss of revenue from these lost customers ranges between $172,500 and $216,000.

11

Spending so much time trying to resolve Bank matters also caused Leveson to lose his work as a cotton scout. For 35 years, Harris Leveson scouted cotton for several local cotton farmers. Prior to the Bank fiasco, Leveson had earned between $55,000 and $65,000 each year at such work. Thus far, Leveson has lost at least $165,000 due to his unavailability to work as a cotton scout.

Defendants' wrongful conduct had a profound effect on Harris Leveson, not only financially but also emotionally. In arriving at an amount for mental anguish, the Court heard direct testimony from not only Harris Leveson but also Christine Jernigan. The Court also observed the demeanor of Harris Leveson during his testimony. The Court observed that he appeared to be a beaten and broken man. He has endured and continues to endure a range of emotions, including devastation, anger, stress, embarrassment and grief, all resulting from the actions of the Defendants. Defendants presented no credible evidence suggesting that the Plaintiffs did not suffer mental anguish and stress from its wrongful conduct.

On July 15, 2005, a few weeks prior to trial, the Bank released the collateral on two of the parcels of land. Larry Pitchford testified at trial that the Bank is ready to extend the fixed rate as represented by Potthoff.

Plaintiffs presented the Court with a chart that noted numerous inconsistencies between Jerry Gulledge's deposition testimony and the taped conversations. Defendants have not disputed those inconsistencies. Jerry Gulledge's deposition testimony is remarkably different from his taped conversations. The Court concludes that Jerry Gulledge missed characterized his statements during his deposition but that he was truthful in his testimony at trial. The Court also concludes that Defendant Larry Pitchford lacked veracity and credibility in much of his testimony.

Jerry Gulledge acknowledged at trial that there was inconsistencies between his deposition testimony and the transcripts of the taped conversations. He admitted at trial telling Leveson that "If you want to play hard ball, we can play hard ball, I can give you until the end of the month to come pay that note off, or we'll foreclose on it." He also admitted telling Leveson that "It's time to dance or go home." Gulledge is now employed at Southland Bank, where he has gained invaluable experience in the banking industry. Gulledge apologized at trial for his threats and the inconsistencies, contending that anything he did or said was at the direction of Bank President Larry Pitchford or Chief Executive Officer Rickey Stuckey.

Gulledge admitted that Peoples Community Bank mishandled Plaintiffs' loans, funds and bank account. He admitted that the Bank negligently and wantonly hired Kevin Potthoff and negligently and wantonly supervised and retained Kevin Potthoff. He admitted that the

12

Bank had no right to withdraw money from Harris Leveson's account. He admitted that there were improprieties with regard to Plaintiffs' loans. He also testified that based on what he now knows, he believes that everything in Plaintiffs' complaint is true.

## Conclusions of Law

In a nonjury trial, the role of the judge is to interpret the law, determine the facts and apply the facts to the law for an eventual decision of the controversy. Ex parte City of Jacksonville, 693 So.2d 465 (Ala. 1996). It is within the province of the trial court when acting as fact finder to weigh conflicting testimony, determine credibility and resolve conflicts in the evidence. Id. The Court is free to choose to believe all, part, or none of the evidence presented.

### •Negligence and Wantonness

Plaintiffs claim that all of the Defendants were negligent and wanton (1) in their dealings with Plaintiffs and in their handling and servicing of Plaintiffs loans, funds and bank accounts; (2) in its employee's notarization of Plaintiff Harris Leveson's signature without speaking with him or witnessing his signature; (3) in hiring Kevin Potthoff and Jerry Gulledge; and (4) in failing to adequately train, monitor and/or supervise its employees.

Negligence is the failure to use reasonable care to prevent harm to oneself or others. A person's conduct is negligent when he either does something that a reasonably prudent person would not do in a similar situation, or fails to do something that a reasonably prudent person would have done in a similar situation.

Wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty an injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he either consciously and intentionally did some wrongful act or consciously omitted some known duty which produced the injury. Machen v. Childersburg Bancorporation, Inc., 761 So.2d 981 (Ala. 1999); Ala. Code, 1975 § 6-11-20(b)(3). When an employee commits wantonness within the line and scope of his employment, his employer is also liable for such wantonness regardless of the employer's lack of actual participation in such wantonness of his employee.

13

The Court concludes that all of the Defendants were negligent and wanton in their dealings with Plaintiffs and in their handling and servicing of Plaintiffs loans, funds and bank accounts; in the Bank employee's notarization of Plaintiff Harris Leveson's signature without speaking with him or witnessing his signature; in hiring Kevin Potthoff and Jerry Gulledge; and in failing to adequately train, monitor and/or supervise its employees.

**(1)     Handling and Servicing of Plaintiffs' Loans, Funds and Bank Accounts**

The Court concludes that all of the Defendants were negligent and wanton in their dealings with Plaintiffs and in their handling and servicing of Plaintiffs' loans, funds and bank accounts. The Court concludes that the evidence in this case more than sufficiently supports this conclusion. Defendant Jerry Gulledge admitted that the Bank mishandled Plaintiffs' loans, funds and bank account. Defendant Jerry Gulledge also admitted that there were improprieties with regard to Plaintiffs' loans.

**(2)     Bank Employee Violates Duty as Notary Public**

The Court concludes that the Bank, by and through its employee Lisa Bell acting within the line and scope of her employment, negligently and wantonly violated her duties as a notary public by failing to speak to Plaintiff Harris Leveson and witness his signatures upon two mortgages.

A notary public owes a duty to act honestly, skillfully and with reasonable diligence. First Bank of Childersburg v. Florey, 676 So.2d 324, 331 (Ala. 1996). This duty imposed on a notary public requires the notary to ascertain the identify of the person whose signature he or she attests. Therefore, this duty cannot be fulfilled unless the transaction is done by or before the notary. For these reasons, the duty of the notary public requires that he or she not certify that a person has acknowledged the execution of a mortgage when the person did not acknowledge the execution before the notary. 676 So.2d at 332. If a notary public does not witness the signatures of the mortgagor, is not in the place where the mortgagor signs the mortgage, and does not see or speak to the mortgagor when he signs the mortgage, and the mortgagor does not acknowledge to the notary that he executed the mortgage, the notary's act of signing her name and affixing her notarial seal to the mortgage is a violation of her legal duty. Eason v. Bynon, 781 So.2d 238 (Ala. Civ. App. 2000).

Lisa Bell, while acting within the line and scope of her employment with the Bank, signed her name and affixed her notarial seal to two mortgages obligating Plaintiffs to the Bank. Lisa Bell owed a duty to Plaintiffs to witness the signatures of Harris Leveson upon

14

said mortgages and to have Harris Leveson acknowledge the execution of the mortgages before her. Bell failed to keep a register book for her notarial acknowledgments as required by law. While Bell testified that she did not remember being present at the Leveson closing, she did admit that she did not know if Leveson signed the mortgage acknowledgments. She also admitted that she could have notarized the documents without witnessing Leveson's execution of the documents. Both Leveson and Jernigan testified that there was no notary in the room during the time that the documents were executed. The Court finds that at the mortgage closing Lisa Bell did not see Harris Leveson, she did not speak to Harris Leveson and she did not witness Harris Leveson's signatures on the mortgages.

Defendants contended that Bell's failure to comply with her notarial duties did not proximately cause the Plaintiffs' damages. The Court concludes otherwise. Plaintiffs presented sufficient evidence that because of the difference in the terms of the mortgages which Leveson actually signed and those which were improperly notarized by Lisa Bell, Plaintiffs were forced to make higher payments at higher interest rates. The discrepancies also caused Harris Leveson to incur enormous mental anguish. The Court concludes that two conflicting sets of loan documents are inexcusable, and that Plaintiffs were damaged as a result.

## (3)    Negligent/Wanton Hiring

Plaintiffs further claimed that the Bank negligently and wantonly hired Kevin Potthoff and Jerry Gulledge. The tort of negligent hiring is separate and distinct from the torts of negligent supervision and negligent retention. Alabama has long recognized a cause of action for negligent hiring. Under Alabama law, an employer may be held liable for injuries to a third party which is the result of the unfitness or incompetence of the employee. Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098 (Ala. 1983); Big B, Inc. v. Cottingham, 634 So.2d 999 (1993), *abrogated on other grounds*, Horton Homes, Inc. v. Brooks, 832 So.2d 44, 57 (Ala. 2001). The employer is negligent in hiring such an employee when the employer knew or should have known of the employee's incompetence or unfitness.

The Bank had been told by Kevin Potthoff's former employer that if Potthoff was going to work in a lending capacity that he would have to be closely supervised. The Bank hired Potthoff as its branch manager then delegated the entire responsibility of lending at that branch to Potthoff while failing to provide any supervision over him. Also Defendant Jerry Gulledge admitted that the Bank negligently and wantonly hired Kevin Potthoff.

There was also sufficient evidence that the Bank negligently and wantonly hired Jerry Gulledge. Gulledge had no previous banking experience. After Potthoff's termination, the Bank put Gulledge in the position of branch manager.

The Bank knew of Potthoff's and Gulledge's incompetence and unfitness yet hired them as branch managers of the Bank. The Court concludes that the Bank negligently and wantonly hired Kevin Potthoff and Jerry Gulledge.

### (4)    Negligent/Wanton Supervision and Retention

Even if this Court had not concluded that Potthoff and Gulledge were negligently and wantonly hired, this Court would nonetheless conclude that the Bank negligently and wantonly supervised and retained Kevin Potthoff and Jerry Gulledge. The facts surrounding Kevin Potthoff's tenure as branch manager conclusively proves that the Bank knew exactly what they were getting when they hired Potthoff. Potthoff's mishandling of his own personal finances clearly indicated that he could not be trusted to handle the finances of others. The Bank was on notice that:

- Potthoff was misrepresenting interest rates and collateral of loans;

- Potthoff was check kiting;

- Potthoff was late in making payments on his personal loan;

- Potthoff was writing cashier's checks to his wife in order to quickly obtain funds;

- Potthoff was issuing loans which had terms different from the terms approved by the Bank's loan committee;

- Potthoff wrote an unsecured loan allegedly for his housekeeper;

- Potthoff opened up an account in his wife's name from which he constantly cycled monies even though he was not on the account's signature card;

- Potthoff had been constantly overdrawn on his personal account at the Bank; and,

- Potthoff, without authorization, withdrew monies from his wife's law firm's account and deposited them into his account.

The Bank's President Larry Pitchford and the Bank's Chief Executive Officer Rickey Stuckey had actual notice of these improprieties, yet the Bank continued to employ Kevin Potthoff. The Court concludes that the Bank knowingly placed Kevin Potthoff in a position to injure the Plaintiffs. The Bank chose to ignore the questionable activities of Kevin Potthoff because Potthoff was what the Bank wanted -- a moneymaking loan officer. In just six months during 2003, Kevin Potthoff wrote more than $5 million in loans, greatly exceeding other Alabama lenders. The Bank simply did not want to lose its leading lender. Finally, Jerry Gulledge admitted that the Bank and Larry Pitchford negligently and wantonly supervised and retained Kevin Potthoff.

## •Fraud/Suppression

Plaintiffs Harris Leveson and Harris Pest & Termite Control say that they were harmed by false statements intentionally, mistakenly and/or recklessly made by Defendants. Plaintiffs say the false statements were: (1) that Defendants would finance two loans at certain rates, terms and conditions;  (2) that the collateral for these loans would be two parcels of property;  (3) that the loan in the amount of $15,559.50 would be increased to $25,000; and, (4) that Defendants would reasonably, properly and in good faith handle, maintain, oversee and/or otherwise account for Plaintiffs' loans, funds and bank account. Plaintiffs also say that they were harmed because Defendants hid or withheld important facts from them.  Plaintiffs also say that Defendants suppressed material facts concerning their loans, funds and bank accounts.

A false statement may be spoken, written or other conduct. To recover damages on this claim, Plaintiffs must establish: (1) that Defendants intentionally, mistakenly and/or recklessly stated to Plaintiffs that a present or past important fact was true; (2) that Defendants' statements were false; (3) that Defendants knew that the statements were false when they made them and Plaintiffs did not know such statements were false; (4) that Defendants intended that Plaintiffs rely on those statements; (5) that Plaintiffs relied on the statements; and (6) that Plaintiffs acted and were harmed. Osborn v. Custom Truck Sales & Service, Div. of Alley-Cassetty Coal, Inc., 562 So.2d 243 (Ala. 1990).  To prove their suppression claim, Plaintiffs must show that Defendants hid or withheld an important fact from Plaintiffs; that Plaintiffs did not know of the important fact; that Plaintiffs acted and was harmed. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970).

Kevin Potthoff consistently represented to Plaintiffs that the Bank would finance a $240,000 loan with a 3.99% fixed rate for 15 years with no balloon and no acceleration clause, that the monthly payment would be approximately $1,700 a month and that the collateral would be two parcels of property. These representations were false. The collateral was four parcels of land instead of two. The interest rate for the large loan was 5.5% instead

17

of 3.99%. The monthly payments were $2,098 instead of $1,723. The loan documents specified a balloon payment and contained an acceleration clause. Plaintiffs relied on those representations to their detriment and they were damaged as a result of the false statements.

Having established that Defendants are guilty of fraud, then the Plaintiffs are entitled to recover for such actual damages that they suffered. In addition to actual damages, punitive damages are available in a fraud action where the plaintiff proves by clear and convincing evidence that the wrongdoer's conduct is malicious, oppressive, or gross, and that the misrepresentation that is the basis of the fraud is made with the knowledge of falsity and with the purpose of injuring the party. Ala. Code, 1975 § 6-11-20.

Because the Court has concluded that Plaintiffs have prevailed on their first two fraud claims, it is unnecessary for the Court to reach plaintiffs' remaining two fraud claims and their suppression claims.

•**Breach of Contract**

Plaintiffs contend that the Bank breached contracts and/or agreements with them. A contract is breached or broken when a party does not do what it promised to do in the contract. To recover damages from Defendant for breach of contract, Plaintiffs must prove: (1) that Plaintiffs and Defendant entered into a contract; (2) that Plaintiffs did all of the things that the contract required them to do; (3) that Defendant failed to do the things that the contract required it to do; and (4) that Plaintiffs were harmed by that failure. Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1303 (Ala. 1991). Plaintiffs are entitled to that sum which would place them in the same condition they would have occupied if the contract had not been breached. Boyette v. Oakes, 518 So.2d 37 (Ala. 1987).

Mental anguish damages may be awarded in certain cases for breach of contract, provided that "the subject matter of the contract is so closely associated with matters of mental concern, or with the emotions of the party to whom the duty is owed, that a breach of that duty can reasonably be expected to result in mental anguish or suffering." B & M Homes, Inc. v. Hogan, 376 So.2d 667, 671 (Ala. 1979)

The Court concludes that the Bank quite clearly breached the contracts and agreements with Plaintiffs.

Plaintiffs entered into an agreement with the Bank when they opened their account. This legal contract between Plaintiffs and the Bank sets forth what Plaintiffs and the Bank both can and must do regarding deposits and withdrawals from the account. The Bank had

18

a duty to properly handle its depositors' account transactions. <u>Reynolds v. McEwen</u>, 416 So.2d 702 (Ala. 1982). Where, as in this case, a depositor issues checks on his or her bank and those checks are properly presented for payment, yet are wrongfully refused or dishonored by the bank, a depositor may then maintain a cause of action for breach of contract and other duties arising out of the bank's wrongful dishonor. <u>First Alabama Bank of South Baldwin v. Prudential Life Insurance Co. of America</u>, 619 So.2d 1313 (Ala. 1993); <u>First National Bank v. Ducros</u>, 27 Ala. App. 193, 168 So. 704 (1936). Plaintiffs, as customers and depositors of Defendant Bank, gave express instructions to the Bank regarding deposits and were given receipts evidencing those deposits. Numerous checks were issued in reliance that those deposits had been made. Yet the Bank wrongfully refused to properly honor those checks, causing Plaintiffs to incur various costs and fees due to insufficient funds in Plaintiffs' account, as well as causing Plaintiff Harris Leveson extreme embarrassment and humiliation. The Bank also removed funds from Plaintiffs' account without authorization.

Plaintiffs also entered into a Loan Modification Agreement with the Bank. The Bank also breached that agreement with Plaintiffs.

Ordinarily punitive damages are not recoverable for breach of contract. <u>Corson v. Universal Door Systems, Inc.</u>, 596 So.2d 565, 572 (Ala. 1991). However, punitive damages have been allowed where fraud or duress was coupled with breach of a contract. <i>See</i> <u>Hines v. Riverside Chevrolet-Olds, Inc.</u>, 655 So.2d 909 (Ala. 1994); <u>Hobson v. American Cast Iron Pipe Co.</u>, 690 So.2d 341, 344 (Ala. 1997).

## •Breach of Fiduciary Duties

Plaintiffs also claim that the Defendants breached fiduciary duties owed to the Plaintiffs. A fiduciary obligation exists whenever one person--the client--places special trust and confidence in another person--the fiduciary--relying upon the fiduciary to exercise discretion or expertise in acting for the client. The fiduciary knowingly accepts that trust and confidence and thereafter undertakes to act in behalf of the client by exercising the fiduciary's own discretion and expertise. The Court recognizes that the mere fact that a business relationship comes into being between two persons does not mean that either owes a fiduciary obligation to the other. If one person engages or employs another and thereafter directs or supervises or approves the other's actions, the person so employed is not a fiduciary. It is only when one party reposes, and the other accepts, a special trust and confidence, usually involving the exercise of professional expertise and discretion that a fiduciary relationship comes into being.

19

When one person does undertake to act for another in a fiduciary relationship, the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the client, or from acting for the fiduciary's own benefit in relation to the subject matter of their relationship. The client is entitled to the best efforts of the fiduciary on the client's behalf, and the fiduciary must exercise skill, care and diligence when acting on behalf of the client. A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary obligation is owed, and the fiduciary is forbidden to obtain an unreasonable advantage at the client's expense. Army Aviation Center Federal Credit Union v. Johnson, 716 So.2d 1250 (Ala. Civ. App. 1998); AmSouth Bank v. Spigener, 505 So.2d 1030 (Ala. 1986).

Kevin Potthoff inspired the confidence of Leveson that he would act in good faith for Leveson's interest. Harris Leveson imposed a great deal of trust in Potthoff and followed his financial recommendations regarding his loans and accounts. Unquestionably, Kevin Potthoff was in a position to exercise dominion over Plaintiffs' account, and the dominion that he exercised ultimately damaged the Plaintiffs. Under these facts, Kevin Potthoff and his employer owed fiduciary obligations to Plaintiffs which they breached. The Bank expressly assumed certain duties to Plaintiffs that the Bank breached. In breaching these fiduciary duties, the Bank acted knowingly, deliberately and/or recklessly and placed its own profit, objectives and success ahead of and to the detriment of the profit, success and objectives of Plaintiffs.

The Bank and the Plaintiffs had a fiduciary relationship which resulted in the attendant duty of the Bank to exercise utmost care, candor, loyalty and good faith in its dealings with Plaintiffs. Based upon the evidence presented in this case, the Court finds that the Bank breached that duty in this case.

•**Conversion**

The Court also concludes that the Bank converted monies from Plaintiffs' account. To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse. Ott v. Fox, 362 So.2d 836 (Ala. 1978). Damages for conversion are measured by the value of the property as of the date of the conversion plus interest at the rate of 6% per annum from the date of the conversion. Charter Hospital of Mobile, Inc. v. Weinberg, 558 So.2d 909, 912 (Ala. 1990). Punitive damages are recoverable for conversion when such conversion was willful or was committed under circumstances of insult or malice. Lyons v. Williams, 567 So.2d 1280 (Ala. 1990). It is sufficient if the proof shows that the conversion was attended by rudeness, wantonness, recklessness or insulting manner or accompanied by circumstances

of fraud, oppression, aggravation or gross negligence. Empire Gas, Inc. v. Cartwright, 595 So.2d 1348 (Ala. 1992).

The Bank converted to its own use certain funds to which Plaintiffs were entitled. Kevin Potthoff caused Plaintiffs to incur substantial NSF fees as a result of his mishandlings of their account. He also had been instructed by Plaintiffs to transfer funds into the account from their line of credit. Pursuant to his authority as branch manager and the instructions he received from Plaintiffs, Potthoff deposited $5,650 into Plaintiffs' account on October 24, 2003. Potthoff provided Plaintiffs with receipts of these deposits. The Bank abruptly withdrew these monies from Plaintiffs' account on November 7, 2003. Jerry Gulledge admitted that the Bank had no right to withdraw money from Harris Leveson's account. This withdrawal without notice to Plaintiffs caused them considerable harm. At the time of this wrongful taking, these funds belonged to the Plaintiffs and were clearly identifiable. Citizens Bank of Moulton v. Jones, 671 So.2d 737 (Ala. Civ. App. 1995). This Court concludes that the $5,650 which Kevin Potthoff deposited into Plaintiffs' account was rightfully owed to the Plaintiffs and should not have been withdrawn by the Bank. There were other appropriate avenues available to the Bank to deal with Potthoff's interference with other customers' accounts. Taking the Plaintiffs' money was not one of them.

•**Outrage**

Plaintiffs also claimed that the actions of the Defendants were extreme and outrageous and were done intentionally or recklessly causing severe emotional distress to Plaintiffs. In order to make out a case of outrageous conduct, Plaintiffs are required to show extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress or bodily harm. Goodwin v. Barry Miller Chevrolet, Inc., 543 So. 2d 1171, 1174 (Ala. 1989). The tort consists of four basic elements: (1) that the Defendant knew or should have known that its conduct was likely to result in emotional outrage; (2) that the conduct was extreme and outrageous; (3) that the Defendant's actions were the cause of the Plaintiff's distress; and (4) that the emotional distress suffered by the Plaintiff was "severe." U.S.A. Oil, Inc. v. Smith, 415 So. 2d 1098, 1100 (Ala. Civ. App.), cert. denied sub nom, Ex parte Smith, 415 So. 2d 1102 (1982). The Defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society." American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1981).

While it has been recognized that a Plaintiff's burden of proving outrage is a heavy one, it has also recognized that this burden is not impossible to meet. Surrency v. Harbison, 489 So. 2d 1097, 1105 (Ala. 1986). In order to establish outrageous conduct by a corporate

Defendant, it must be shown that the conduct "was perpetrated as a means to further the Defendant corporation's business," or that a jury could conclude that "this is the way the company does business." Busby v. Truswal Systems Corp., 551 So. 2d 322, 327 (Ala. 1989).

The Court concludes that this case is the epitome of the claim of outrage. The evidence presents a power using its force to coldly abuse one of less significance with absolute knowledge of the consequences. Harris Leveson was absolutely helpless when he attempted to straighten out the mess which had been caused by Kevin Potthoff. Instead of being treated apologetically or respectfully, Leveson was met with absolute cruelty. He was sent two foreclosure notices even though he was not even late on his loan payments. The Bank abruptly removed $5,650 from his business account without notice, knowing that overdrafts would occur, and then threatened him regarding the resulting overdrafts. And at the time that the State President and branch manager summoned Harris Leveson to tell him that they expected Leveson to pay off the overdrafts, that the Bank could call all his loans and foreclose on all four parcels of property - including his home - the Bank had already written off the overdrafts. The Defendants had every intention of pressuring Harris Leveson into silently paying the Bank more money.

### •Compensatory Damages

The Court, having found in favor of the Plaintiffs on the above claims, assesses Plaintiffs' compensatory damages at Two Million Five Hundred Thousand Dollars ($2,500,000).

The actual damages includes $9,725 for insufficient fund and overdraft fees, $9,552 in overpayments on loans, $7,370 for additional office expenses, $5,650 representing the amount converted from Plaintiffs' account, $216,000 representing lost customers, $165,000 representing the lost value of work as a cotton scout, $42,000 representing Jernigan's time working on the bank errors and $211,000 representing the payoff of the void mortgage.

In addition the Plaintiff had 52 different checks returned after being presented for payment. Many of these checks were presented for payment more than once. Each returned check compounded the damage to the Plaintiff.

The Court recognizes that the Bank released two of the parcels shortly before trial and offered at trial to correct Plaintiffs' interest rate on the mortgage to 3.99% as promised by Potthoff. The Court has taken these facts into consideration in arriving at its award.

22

**•Punitive Damages**

A principal can be held responsible for an act of his agent, which was committed beyond the scope of the agent's authority by subsequently ratifying such act. Ratification by the principal of an act of his agent requires an intent on the part of the principal to ratify such act. This intention may be express or implied, and may be inferred where there is evidence intending to show that the principal, with adequate knowledge of the facts and circumstances, so conducted himself as to indicate his purpose to confirm or adopt the unauthorized act of his agent. The Court concludes based on the evidence presented that the Bank authorized and ratified the conduct of its employees, including Kevin Potthoff, Larry Pitchford, Jerry Gulledge and Lisa Bell.

In order for the Plaintiffs to recover punitive damages they must prove by clear and convincing evidence that the Bank consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to the Plaintiffs. AutoZone, Inc. v. Leonard, 812 So.2d 1179 (Ala. 2001). Oppression is the subjecting of a person to cruel and unjust hardship in conscious disregard of that person's rights. ConAgra, Inc. v. Turner, 776 So.2d 792 (Ala. 2000).

The record in this case is replete with substantial evidence which is clear and convincing to the Court sitting as the trier of facts in this matter that the following took place:

- Instead of acknowledging that its loan documents demonstrated fraud and insufficient acknowledgments, the Bank menacingly sought to foreclose;

- Instead of giving their customer the benefit of the doubt regarding his dealings with a manager whom the Bank knew to be dishonest, the Bank insisted that Leveson provide them with "written proof" of his claims;

- There was testimony that certain bank documents should have existed but none could be found and no credible explanation was given for their absence;

- Instead of simply putting Leveson's loans and account in the state in which they should have been, the Bank put Harris Leveson on the verge of financial ruin;

- Defendants utilized pressure, leverage, threats and other coercive measures to force payment of loans; and,

- Defendants Pitchford and Gulledge lacked veracity and credibility in much of their testimony.

23

The Court concludes that the evidence in this case more than sufficiently supports the inference that the Defendants' conduct warrant the imposition of punitive damages. The Court, having found in favor of the Plaintiffs on the above claims, assesses the Plaintiffs' punitive damages at One Million Dollars ($1,000,000).

## Conclusion

Based on the foregoing Findings of Fact and Conclusions of Law, it is **ORDERED, ADJUDGED** and **DECREED** as follows:

1.    The Court accordingly directs that final judgment be entered in favor of the Plaintiffs, Harris Leveson and Harris Pest & Termite Control, and against Defendants, Peoples Community Bank, Larry Pitchford and Jerry Gulledge, jointly and severally in accordance with the Court's verdict as follows:  Compensatory damages in the amount of $2,500,000 and punitive damages in the amount of $1,000,000.

2.    Costs are taxed to the Defendants.

DONE and ORDERED this the _7th_ day of _October_ , 2005.


_____
CIRCUIT JUDGE

cc:    Ted Taylor, Esq.
       Leah O. Taylor, Esq.
       James L. Martin, Esq.

State of Alabama
Unified Judicial System

Form ARCivP-93    Rev. 5/99

# COVER SHEET
## CIRCUIT COURT – CIVIL CASE
### (Not for domestic Relations Cases)

Case Number

Date of Filing:          Judge Code:

Month  Day    Year

| GENERAL INFORMATION |
|---|

IN THE **CIRCUIT** COURT OF **BARBOUR** COUNTY, ALABAMA

PLAINTIFF  PEOPLESSOUTH BANK, et al.          v. DEFENDANT  PROGRESSIVE CASUALTY INSURANCE COMPANY, INC., et al.

First Plaintiff  ☒ Business        ☐ Individual      **First Defendant**   ☒ Business       ☐ Individual
                 ☐ Government      ☐ Other                                  ☐ Government     ☐ Other

## NATURE OF SUIT:    Select primary causes of action, by checking box (check only one) that best characterizes your action:

### TORTS: PERSONAL INJURY

- ☐ WDEA  - Wrongful Death
- ☐ TONG  - Negligence: General
- ☐ TOMV  - Negligence: Motor Vehicle
- ☐ TOWA  - Wantonness
- ☐ TOPL  - Product Liability/AEMLD
- ☐ TOMM  - Malpractice - Medical
- ☐ TOLM  - Malpractice - Legal
- ☐ TOOM  - Malpractice - Other
- ☒ TBFM  - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX  - Other: _____

### TORTS: PROPERTY INJURY

- ☐ TOPE  - Personal Property
- ☐ TORE  - Real Property

### OTHER CIVIL FILINGS

- ☐ ABAN  - Abandoned Automobile
- ☐ ACCT  - Account & Nonmortgage
- ☐ APAA  - Administrative Agency Appeal
- ☐ ADPA  - Administrative Procedure Act
- ☐ ANPS  - Adults in Need of Protective Services

### OTHER CIVIL FILINGS (cont'd)

- ☐ MSXX  - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT  - Civil Rights
- ☐ COND  - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP  - Contempt of Court
- ☐ CONT  - Contract/Ejectment/Writ of Seizure
- ☐ TOCN  - Conversion
- ☐ EQND  - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale for Division
- ☐ CVUD  - Eviction Appeal/Unlawful Detainer
- ☐ FORJ  - Foreign Judgment
- ☐ FORF  - Fruits of Crime Forfeiture
- ☐ MSHC  - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB  - Protection from Abuse
- ☐ FELA  - Railroad/Seaman (FELA)
- ☐ RPRO  - Real Property
- ☐ WTEG  - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP  - Workers' Compensation
- ☐ CVXX  - Miscellaneous Circuit Civil Case

*FILED  MAY 2 6 2006  DAVID S. NIX, CLERK  BARBOUR COUNTY, ALABAMA*

**ORIGIN** *(check one)*    F ☒ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER

                            R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT    _____

## HAS JURY TRIAL BEEN DEMANDED?    ☐ YES  ☒ NO    NOTE: Checking "Yes" **does not** constitute a demand for a jury trial (See **Rules 38 and 39.** ARCP, for procedure)

## RELIEF REQUESTED:    ☐ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

### ATTORNEY CODE

| Atty Code: WAL175 | May 25, 2006 Date | *[signature]* Signature of Attorney/Party filing this form |
|---|---|---|

## MEDIATION REQUESTED:    ☐ YES    ☒ NO    ☐ UNDECIDED

# BURR & FORMAN LLP

### ATTORNEYS AND COUNSELORS

3100 WACHOVIA TOWER
420 NORTH 20TH STREET
BIRMINGHAM, ALABAMA 35203

(205) 251-3000
(205) 458-5100 (FAX)
www.burr.com

Jason A. Walters
Direct Dial: (205) 458-5469
Direct Fax: (205) 244-5717
Email: jwalters@burr.com

May 25, 2006



## VIA FEDERAL EXPRESS - PRIORITY OVERNIGHT

Hon. David S. Nix, Clerk
Circuit Court for Barbour County, Alabama
Barbour County Courthouse
303 East Broad Street
Eufaula, Alabama  36027

      **Re:**    *PeoplesSouth Bank, et al. v. Progressive Casualty Insurance Company, Inc., et al.; Circuit Court of Barbour County, Alabama*

Dear Mr. Nix:

Please find enclosed for filing the following documents in the above-referenced matter:

1. The Civil Cover Sheet;
2. The original and 6 copies of the Complaint;
3. Check in the amount of $429.00; and
4. Four envelopes for service by certified mail, as well as a self-addressed stamped envelope to my attention.

Please file the Complaint and serve the defendants via certified mail.  After filing the Complaint, please return two extra copies of the Complaint stamped "filed" to my attention in the enclosed envelope.

Please call me at the direct dial number above if you have any questions.  Thank you in advance for your cooperation in this matter.

Very truly yours,

Jason A. Walters

JAW/jas
Enclosures

*This communication (including attachments) does not constitute tax advice*
*by Burr & Forman LLP regarding any matters or issues involving federal tax law.*

**ALABAMA** • **GEORGIA** • **MISSISSIPPI** • **TENNESSEE**



State of Alabama
Unified Judicial System

C-34J 4/82

# SUMMONS – CIVIL

**Case Number**

CV-06-85

ID ____ YR ____

Number

IN THE   CIRCUIT COURT        COURT OF     BARBOUR            COUNTY

Plaintiff   PEOPLESSOUTH BANK, et al.    vs. Defendant   PROGRESSIVE CASUALTY INS. CO., INC., et al.

NOTICE TO      HARRIS LEVESON

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEYS GERALD P. GILLESPY, RICKY J. McKINNEY, JASON A. WALTERS WHOSE ADDRESS IS BURR & FORMAN LLP, 420 North 20th Street, 3100 Wachovia Tower, Birmingham, Alabama  35203 and PETER A. McNISH, LEE & McNISH, P. O. Box 1665, Dothan, Alabama 36302-1665.

THIS ANSWER MUST BE MAILED OR DELIVERED WITH 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THE COURT.

☐ **TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by either rules 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure:  You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒ This service by certified mail of this summons is initiated upon the written request of Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

DATE  May 26, 2006          CLERK/REGISTER          By:

*[stamp: FILED MAY 26 2006 DAVID S. NIX CLERK BARBOUR CO., ALABAMA]*

**RETURN ON SERVICE:**

☐ Certified Mail return receipt received in this office on (Date) _____
(Return receipt hereto attached).

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on (Date) _____.

DATE _____
ADDRESS
OF SERVER _____

SERVER SIGNATURE _____

TYPE OF PROCESS SERVER _____

Court Record (white)        ADDRESSEE (Green)

1467935

| State of Alabama<br>Unified Judicial System<br><br>C-34J | **SUMMONS – CIVIL** | **Case Number**<br>CV-06 - 85<br>ID          YR<br><br>Number |
|---|---|---|

IN THE    CIRCUIT COURT            COURT OF        BARBOUR            COUNTY

Plaintiff    PEOPLESSOUTH BANK, et al.        vs. Defendant    PROGRESSIVE CASUALTY INS. CO., INC., et al.

NOTICE TO    HARRIS PEST AND TERMITE CONTROL

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEYS GERALD P. GILLESPY, RICKY J. McKINNEY, JASON A. WALTERS WHOSE ADDRESS IS BURR & FORMAN LLP, 420 North 20th Street, 3100 Wachovia Tower, Birmingham, Alabama 35203 and PETER A. McINISH, LEE & McINISH, P. O. Box 1665, Dothan, Alabama 36302-1665.

THIS ANSWER MUST BE MAILED OR DELIVERED WITH 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THE COURT.

☐    **TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by either Rules 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒    This service by certified mail of this summons is initiated upon the written request of Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

May 26, 2006                                                    By: _____
DATE                    CLERK/REGISTER

**RETURN ON SERVICE:**

☐    Certified Mail return receipt received in this office on (Date) _____
(Return receipt hereto attached).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on (Date) _____.

DATE _____
ADDRESS _____
OF SERVER _____

SERVER SIGNATURE _____

TYPE OF PROCESS SERVER _____

Court Record (white)        ADDRESSEE (Green)

1467935



| State of Alabama Unified Judicial System | **SUMMONS – CIVIL** | **Case Number** CV 06-85 |
|---|---|---|
| C-34J          4/82 | | ID          YR  Number |

IN THE    CIRCUIT COURT          COURT OF          BARBOUR          COUNTY

Plaintiff    PEOPLESSOUTH BANK, et al.    vs. Defendant    PROGRESSIVE CASUALTY INS. CO., INC., et al.

NOTICE TO    ROYAL INDEMNITY COMPANY, as successor in interest to Globe Indemnity Company

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEYS GERALD P. GILLESPY, RICKY J. McKINNEY, JASON A. WALTERS WHOSE ADDRESS IS BURR & FORMAN LLP, 420 North 20th Street, 3100 Wachovia Tower, Birmingham, Alabama 35203 and PETER A. McINISH, LEE & McINISH, P. O. Box 1665, Dothan, Alabama 36302-1665.

THIS ANSWER MUST BE MAILED OR DELIVERED WITH 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THE COURT.

☐    **TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by either Rules 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒    This service by certified mail of this summons is initiated upon the written request of Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

*May 26, 2006*                          *[signature]*                          By: *[signature]*

DATE                                      CLERK/REGISTER

*FILED MAY 26 2006 DAVID S. NIX, CLERK BARBOUR CO., ALABAMA*

**RETURN ON SERVICE:**

☐    Certified Mail return receipt received in this office on (Date) _____ (Return receipt hereto attached).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on (Date) _____.

DATE _____
ADDRESS
OF SERVER _____

SERVER SIGNATURE _____

TYPE OF PROCESS SERVER _____

Court Record (white)          ADDRESSEE (Green)

1467935

| State of Alabama Unified Judicial System | **FILED** MAY 30 2006 DAVID S. NIX BARBOUR CO. ALABAMA | Case Number |
|---|---|---|
| C-34J    4/82 | **SUMMONS – CIVIL** | CV-06 85 ID    YR Number |

IN THE    CIRCUIT COURT                COURT OF    BARBOUR                COUNTY

Plaintiff    PEOPLESSOUTH BANK, et al.    vs. Defendant    PROGRESSIVE CASUALTY INS. CO., INC., et al.

NOTICE TO    PROGRESSIVE CASUALTY INSURANCE COMPANY, INC.

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEYS GERALD P. GILLESPY, RICKY J. McKINNEY, JASON A. WALTERS WHOSE ADDRESS IS BURR & FORMAN LLP, 420 North 20th Street, 3100 Wachovia Tower, Birmingham, Alabama 35203 and PETER A. McINISH, LEE & McINISH, P. O. Box 1665, Dothan, Alabama 36302-1665.

THIS ANSWER MUST BE MAILED OR DELIVERED WITH 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THE COURT.

☐    **TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by either rules 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒    This service by certified mail of this summons is initiated upon the written request of Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_May 26, 2006_    _David Nix_    By: _AA_

DATE                CLERK/REGISTER

**RETURN ON SERVICE:**

☐    Certified Mail return receipt received in this office on (Date) _____
     (Return receipt hereto attached).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on (Date) _____.

DATE
ADDRESS _____
OF SERVER _____

_____

SERVER SIGNATURE _____

TYPE OF PROCESS SERVER _____

Court Record (white)        ADDRESSEE (Green)

1467935

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Progressive Casualty Insurance Company, Inc.
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Slauson_          ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name )    C. Date of Deliver
                                   6/1/6

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandis
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
(Transfer from service label)

7005 1820 0002 9400 1858

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-15

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Royal Indemnity Company
as successor in interest to Globe Indemnity Cor
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, Alabama  36104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _D Brown_          ☐ Agent
                     ☐ Addre

B. Received by ( Printed Name )    C. Date of Deli
  D Brown                           6/1/0

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandis
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
(Transfer from service label)

7005 1820 0002 9400 1865

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-154

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Harris Leveson
~~151 Warren Road~~
~~Midway, Alabama 36053~~

P.O. Box 477 Eufaula AL. 36072

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7005 1820 0002 9400 1872

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-154

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No   6-2-06

1. Article Addressed to:

Harris Pest and Termite Control
c/o Harris Leveson
~~151 Warren Road~~
~~Midway, Alabama 36053~~

P.O. Box 477 Eufaula AL. 36072

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7005 1820 0002 9400 1889

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-15

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

**FILED**

JUN 22 2006

DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

PEOPLESSOUTH BANK; LARRY                §
PITCHFORD and JERRY GULLEDGE,            §
                                         §
      Plaintiffs,                        §
                                         §
v.                                       §        CIVIL ACTION NO.
                                         §
PROGRESSIVE CASUALTY INSURANCE           §        CV-06-85
COMPANY, INC.; ROYAL INDEMNITY           §
COMPANY, as successor in                 §
interest to GLOBE INDEMNITY              §
COMPANY; HARRIS LEVESON; and             §
HARRIS PEST AND TERMITE                  §
CONTROL, INC.,                           §
                                         §
      Defendants.                        §

## ANSWER OF DEFENDANTS HARRIS LEVESON AND HARRIS PEST AND TERMITE CONTROL

Come now the Defendants, Harris Leveson and Harris Pest and Termite Control, Inc., by and through their undersigned counsel, and in answer to the complaint previously filed by Plaintiffs PeoplesSouth Bank, Larry Pitchford and Jerry Gulledge, state as follows:

1.    The complaint fails to state a claim against Defendants Harris Leveson and Harris Pest and Termite Control upon which relief can be granted.

2.    Defendants Harris Leveson and Harris Pest and Termite Control deny the material allegations of the complaint and demand strict proof thereof.

3.    Defendants Harris Leveson and Harris Pest and Termite Control further reserve the right to assert additional defenses as discovery progresses in this case.

_____
TED TAYLOR
LEAH O. TAYLOR
Attorneys for Defendants

Harris Leveson and Harris Pest and Termite Control, Inc.

OF COUNSEL:

TAYLOR & TAYLOR
2130 Highland Avenue
Birmingham, Alabama 35205
(205) 558-2800

### CERTIFICATE OF SERVICE

    I hereby certify that I have this date mailed a copy of the foregoing to all attorneys and/or parties of record by first-class mail, postage prepaid on this the 22nd day of June, 2006.

Gerald P. Gillespy, Esq.
Ricky J. McKinney, Esq.
Jason A. Walters, Esq.
Burr & Forman, LLP
3100 Wachovia Tower
Birmingham, Alabama 35203

Peter A. McInish, Esq.
Lee & McInish
P. O. Box 1665
Dothan, Alabama 36302

Progressive Casualty Insurance Company, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

Royal Indemnity Company
as successor in interest to Globe Indemnity Company
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, Alabama 36104

OF COUNSEL

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

PEOPLESSOUTH BANK, LARRY          )
PITCHFORD, and JERRY GULLEDGE,    )
                                  )
        Plaintiffs,               )
                                  )
v.                                )
                                  )
PROGRESSIVE CASUALTY INSURANCE    )    Civil Action No.  CV-06-85
COMPANY; ROYAL INDEMNITY          )
COMPANY, as successor in interest to  )
GLOBE INDEMNITY COMPANY; HARRIS   )
LEVESON; and HARRIS PEST AND      )
TERMITE CONTROL,                  )
                                  )
        Defendants.               )

## NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendants Progressive Casualty Insurance Company and Royal Indemnity Company, as successor in interest to Globe Indemnity Company (collectively "Defendants") hereby give notice to the Circuit Court of Barbour County Alabama, and to counsel for the Plaintiffs and Defendants Harris Leveson and Harris Pest and Termite control, these parties being the only adverse parties, that Defendants have today filed a Notice of Removal with the United States District Court for the Middle District of Alabama, Northern Division, and that this case has been removed to that Court.  Attached is a copy of the Notice of Removal.

DATED this **27** day of June, 2006.

Respectfully submitted,

Charles A. Stewart III (STE067)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
Email: cstewart@bradleyarant.com

OF COUNSEL:

Thomas R. Elliott, Jr. (ELL021)
LONDON, YANCEY, & ELLIOTT, L.L.C.
2001 Park Place, Suite 430
Birmingham, Alabama 35203
Telephone: (205) 380-3600
Facsimile: (205) 251-8929
Email: telliott@lyelaw.com

Scott B. Smith (SMI219)
Bradley Arant Rose & White LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
Telephone: (256) 517-5100
Facsimile: (256) 517-5200
Email: ssmith@bradleyarant.com

Hallman B. Eady (EAD006)
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: heady@bradleyarant.com

For Royal Indemnity Company
John C.S. Pierce
Butler Pappas Weihmuller Katz Craig LLP
1110 Montlimar Drive
Suite 1050
Mobile, AL 36602
Telephone: (251) 338-1326
Facsimile: (251) 338-3805
jpierce@butlerpappas.com

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have this date served the above and foregoing Notice of Filing Notice of Removal on:

        Peter A. McInish
        Lee & McInish
        Post Office Box 1665
        Dothan, AL 36302

        John C.S. Pierce
        Butler Pappas Weihmuller Katz Craig LLP
        1110 Montlimar Drive
        Suite 1050
        Mobile, Alabama 36602

        Gerald P. Gillespy
        Rickey J. McKinney
        Jason A. Walters
        Burr & Forman, LLP
        3100 Wachovia Tower
        420 North 20th Street
        Birmingham, AL 35203

        Ted Taylor
        Leah O. Taylor
        Taylor & Taylor
        2130 Highland Avenue
        Birmingham, AL 35205

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this __27__ day of June, 2006.

                             OF COUNSEL